## DELTA MATERIALS CORPORATION *vs.* JOHN R. BAGDON, JR., & others.[1]

No. 96-P-147.

Franklin. April 8, 1997. - August 6, 1997.

Present: PORADA, IRELAND, & GREENBERG, JJ.

*Real Property,* Partition. *Value. Evidence,* Value.

In an action for partition of land, the judge erred in basing his determination of the fair market value of the acreage solely on the fair market value of the recoverable gravel in the ground without considering the residual value of the land; further, the judge's reliance on the plaintiff's expert's income capitalization method was clearly erroneous, where the expert's underlying assumptions were not supported by facts. [309-311]

On remand of an action for partition for redetermination of the value of the land, the purchase price of an adjacent parcel of comparable use and value would be highly relevant to a determination of the market value of the land in question. [311]

In an action for partition of land, the judge properly in his discretion found that the highest and best use of a certain tract of the property in question was for gravel removal. [311-312]

PETITION filed in the Franklin Division of the Probate and Family Court Department on August 26, 1987.

After review by this court, 33 Mass. App. Ct. 333 (1992), further proceedings were had before *Henry O'Connor, Jr.,* J.

*Jack D. Curtiss* for the defendants.

*W. Garth Janes* for the plaintiff.

PORADA, J. This is the second appeal by the defendants in this action filed by the plaintiff seeking the partition of land in Sunderland. The land consists of three noncontiguous, undeveloped tracts of approximately one, thirty-seven, and 101 acres. The plaintiff owns a four-fifths interest and the defendants own a one-fifth interest in the three tracts as tenants in common. In the

---

[1]David R. Bagdon and Richard Bagdon. Helen Bagdon, the mother of the three respondents, was an additional respondent but has since died.

first appeal, the defendants challenged an "interlocutory order" of a Probate Court judge directing a commissioner to make a partition by sale of the three tracts on the ground that the judge had failed to explore the possibility of a division in kind of the land. 33 Mass. App. Ct. 333 (1992).[2] We determined that the order should be vacated and the case remanded to the Probate Court for the judge to determine the fair market value of the three tracts and address anew whether an advantageous division of the land could be made. Pursuant to our order, the Probate Court judge, after taking additional evidence, determined the fair market value of the three tracts and that an advantageous division of them could be made. From an interlocutory decree specifying the division in kind to be made by the commissioner and payment by the plaintiff to the defendants of an owelty[3] in the sum of $25,400, the defendants filed this appeal.

The defendants' appeal centers on the valuation attributed to the thirty-seven acre tract and to twenty-five acres of the 101 acre tract. The judge determined that the highest and best use of this acreage was for gravel removal. He determined that the thirty-seven acre tract contained 2,390,000 cubic yards of recoverable gravel valued at twenty-one cents per cubic yard and arrived at a fair market value for this tract of $501,900. He found that the twenty-five acre tract contained 2,490,000 cubic yards of gravel valued at twenty-one cents per cubic yard and arrived at a fair market value of $522,900. In arriving at the figure of twenty-one cents per cubic yard for the recoverable gravel, the judge noted that he relied upon six comparable sales of gravel land including a twenty-eight acre tract contiguous to the thirty-seven acre tract which the plaintiff had agreed to buy for $1,000,000.

The defendants argue that the judge erred (1) in applying a method of valuation based on the unit price of a cubic yard of recoverable gravel in the ground; (2) in failing to give sufficient weight to the comparable executory sale of the twenty-eight acre tract lying adjacent to the thirty-seven acre tract; and (3) in finding that the highest and best use of the twenty-five acres is

---

[2]Though the order was denominated "interlocutory," it was final by nature and thus appealable. See *Delta Materials Corp.* v. *Bagdon*, 33 Mass. App. Ct. 333, 333 n.3 (1992); G. L. c. 241, § 10.

[3]As stated in *Delta Materials*, owelty is "[t]he sum of money ordered to be paid . . . to equalize a disproportionate division of property." 33 Mass. App. Ct. at 338 n.7.

for gravel removal. We conclude that the judge erred in basing his determination of the fair market value of this acreage solely on the fair market value of the recoverable gravel in the ground and remand the action to the Probate Court for the judge to reassess the fair market value and consider anew the advantageous division of the property. We also hold that the judge did not abuse his discretion in finding that the highest and best use of the twenty-five acres was for gravel removal. Finally, because we conclude that the judge applied an erroneous method of valuation, we need not consider whether he gave sufficient weight to the comparable executory sale of the twenty-eight acre tract contiguous to the thirty-seven acre tract.

We address each of the defendants' claims of error.

1. *Method of valuation.* The defendants argue that the judge's method of arriving at the fair market value of the two tracts in question was erroneous because he equated the value of the land with the value of the recoverable gravel in the ground and accepted the plaintiff's expert witness's valuation based on the gravel recoverable by a third party rather than by the plaintiff. There is no question that in arriving at the fair market value of the land the judge could properly consider the uses to which the property might be applied or to which it was reasonably adapted. *Correia* v. *New Bedford Redev. Authy.*, 375 Mass. 360, 361 (1978). There is also no question that the judge, within his discretion, could consider evidence of the value of the gravel deposits in the ground based upon the income-capitalization method of valuation in arriving at the value of the land. *Lic, Inc.* v. *Hudson*, 10 Mass. App. Ct. 815, 816 (1980). *Young Men's Christian Assn. of Quincy* v. *Sandwich Water Dist.*, 16 Mass. App. Ct. 666, 668-669, 670-673 (1983). See *Providence & Worcester R.R.* v. *Worcester*, 155 Mass. 35, 41 (1891); *H.E. Fletcher Co.* v. *Commonwealth*, 350 Mass. 316, 323-324 (1966). As well, the judge could properly have based the market value on the value to a third party in an arms-length transaction in a free and open market rather than the value to the parties. See, e.g., *Suburban Land Co.* v. *Arlington*, 219 Mass. 539, 541 (1914) ("[t]he opinion of the buying public . . . expressed in a free market is what usually determines value").

Where the judge went astray, however, was in valuing this acreage based solely on a twenty-one cents-per-cubic-yard value

for the in-ground gravel based on the plaintiff's expert witness's[4] capitalization of income to be derived from the sale of removable gravel in the thirty-seven acre tract and on consideration of the sales of six tracts of gravel land. While the judge properly accepted the plaintiff's expert witness's valuation of net income from the recoverable gravel as evidence of the value of the thirty-seven acre tract, it would appear that the witness's calculations were flawed because they were based on the premise that a third party would obtain only half the gravel sales the plaintiff normally makes from an adjacent gravel pit, and thus a third party would excavate only 60,000 cubic yards of gravel annually for a forty-six year useful life for the gravel pit. The witness, however, acknowledged that the plaintiff would be able to excavate twice that amount from the same pit for a useful life of fifteen to twenty years at less cost and offered no explanation why a third party similarly situated in the gravel removal business would only obtain half the gravel sales the plaintiff normally makes, and not be able to accomplish the same excavation rate of removal over a fifteen to twenty year period at the same cost as to the plaintiff. Consequently, we conclude that the judge's reliance on the witness's income capitalization method[5] was clearly erroneous.

Further, the judge's acceptance of the twenty-one cents-per-cubic-yard value for the in-ground gravel was not aided by the consideration of the six alleged comparables. Assuming without deciding that the six tracts were comparable, the value per cubic yard was arrived at by the same expert witness by simply divid-

---

[4]The plaintiff's expert witness was Robert Warner, the treasurer and chief executive officer of the plaintiff and president and treasurer of a construction corporation, Warner Bros. Inc.

[5]The income capitalization approach utilized by the witness was as follows. Based on other evidence admitted at trial, he assumed that the thirty-seven acre tract contained 2,390,000 cubic yards of gravel, which upon removal would inflate to 2,748,000 cubic yards of gravel. He then opined that a third party purchaser would only be able to excavate 60,000 cubic yards annually and that it would take forty-six years to excavate fully all of the gravel in that pit at that rate. Using the current purchase price of $2.50 per cubic yard for gravel, he multiplied that figure times the 60,000 cubic yards to arrive at an annual gross income of $150,000. From that figure, he subtracted annual expenses of $103,507, that he estimated would be incurred leaving a net income of $46,493. He then performed what he described as a "net present value or a discounted cash flow analysis" based on the forty-six year useful life of the gravel pit to arrive at a fair market value for the property of $505,046 or twenty-one cents per cubic yard of in-ground gravel.

ing the purchase price allocated to that portion of the land containing gravel deposits by the estimated amount of in-ground gravel to arrive at a unit price. This methodology is erroneous because it ignores the well-established principle that the market value of land is not simply the value of the underlying gravel but the value of the land as enhanced by the gravel deposits. *Bates Sand & Gravel Co.* v. *Commonwealth*, 380 Mass. 933, 934 (1980). In the judge's acceptance of this method of valuation he excluded any value placed on the residual land which, once the gravel was removed, had to be reclaimed under the special permit requirements of the town of Sunderland applicable to the use of property for sand and gravel removal.

Accordingly, we determine that the case must be remanded to redetermine the fair market value of the two tracts and for reexamination of the question of the advantageous division of the three tracts.

2. *Executory sale.* The defendant argues that the judge did not give sufficient weight to the executory sale of the twenty-eight acre tract adjacent to the thirty-seven acres. We need not resolve this issue because of our conclusion that the judge employed an improper method of valuation for this tract. Although there was no objection to the admissibility of the purchase and sales agreement regarding this tract, ordinarily agreements to purchase a comparable tract are not admissible to show the value of land. See *Brush Hill Dev., Inc.* v. *Commonwealth*, 338 Mass. 359, 364-365 (1959). If this sale has now been consummated, the purchase price for this tract would be highly relevant in a determination of the market value of the acreage in question.

3. *Use of the twenty-five acre tract.* The defendant argues that the judge erred in determining that the highest and best use of a portion of the 101 acre tract, approximately twenty-five acres, was for gravel removal because the plaintiff had failed to show that its use for that purpose was imminent or that the criteria for obtaining a special permit for that use under the Sunderland zoning by-law could be met. See *Skyline Homes, Inc.* v. *Commonwealth*, 362 Mass. 684, 687 (1972). There was ample evidence that the twenty-five acres contained gravel deposits similar in kind to those existing in the thirty-seven acre tract. The plaintiff, however, presented evidence that it would not have any use for this land for that purpose for a substantial period of time because of the presence of gravel deposits in the

thirty-seven acre tract and its proposed purchase of the twenty-eight acre tract. The plaintiff also offered evidence that it had had no trouble in obtaining a special permit for that purpose in the past and that an applicant could meet the criteria for this purpose. We observe that the parties did not dispute that the highest and best use of the thirty-seven acre tract, which is located across the street from the twenty-five acre tract, was for gravel removal and would likewise be subject to the same special permit requirements. In light of the evidence presented, and in recognition that the highest and best use is not measured by the use that the parties themselves would ascribe to the property but rather the use that a third party, in a free and open market in an arms-length transaction, would consider the highest and best, *Correia* v. *New Bedford Redev. Authy.*, 375 Mass. at 361, we conclude that it lay within the judge's ultimate discretion to find that the highest and best use for the twenty-five acre tract was for gravel removal. *Young Men's Christian Assn. of Quincy* v. *Sandwich Water Dist.*, 16 Mass. App. Ct. at 670.

Accordingly, the interlocutory decree is vacated, and the action is remanded to the Probate and Family Court for further proceedings consistent with this opinion.

*So ordered.*