DELTA MATERIALS CORPORATION vs. JOHN R. BAGDON, JR.,
& others.[1]

No. 01-P-1629.

Franklin. May 15, 2003. - September 26, 2003.

Present: GELINAS, KASS, & TRAINOR, JJ.

*Real Property,* Partition, Restrictions, Conservation restriction. *Value.*
*Evidence,* Value. *Municipal Corporations,* By-laws and ordinances.

In an action for partition of land, the judge, in valuing the property, did not err
in deciding not to give weight to the enhanced value that the property
might have to one party, where there was no evidence that would trigger
the use of the enhancement factor rather than the price that a third party
would pay in a free and open market. [442-443]

On remand of an action for partition of land, the judge was warranted in find-
ing that zoning by-law changes that had occurred since the time of a previ-
ous proceeding, or that were contemplated, did not constitute a material
change in circumstances bearing on the highest and best use of the property,
and his findings of fact on this issue were not clearly erroneous. [443-445]

In an action for partition of land, the judge, in valuing the property, did not err
in relying on the market judgments of the plaintiff's expert. [445]

PETITION filed in the Franklin Division of the Probate and
Family Court Department on August 26, 1987.

After review by this court, 33 Mass. App. Ct. 333 (1992),
and 43 Mass. App. Ct. 307 (1997), further proceedings were
had before *Geoffrey A. Wilson,* J.

*Janet H. Pumphrey* for the defendants.

*Samuel A. Marsella* for the plaintiff.

KASS, J. In 1987, Delta Materials Corporation (Delta), which
is in the gravel business, brought a petition under G. L. c. 241
to partition real property. The land involved, which is in Sun-
derland, consists of three noncontiguous undeveloped parcels
that contain approximately one acre, thirty-seven acres, and 101

---

[1]David R. Bagdon and Richard Bagdon.

acres. *Delta Materials Corp.* v. *Bagdon,* 33 Mass. App. Ct. 333, 334 (1992) (*Delta I*). Delta owns a four-fifths undivided interest in those parcels as a tenant in common with the respondents, David, John, and Richard Bagdon (the Bagdons), who together own the remaining one-fifth interest.

What has driven the controversy over the partition — this is the third appeal — is that the Bagdon family has farmed part of the land since the beginning of the twentieth century and certain members of the Bagdon family desire to continue that tradition. Delta operates a well-established gravel business adjoining the thirty-seven acre parcel and wants to haul gravel from that land and any other it acquires through partition.[2] *Delta I* at 334. Delta acquired its four-fifths interest in 1986-1987 from other members of the Bagdon family who, along with the Bagdons (i. e., David, John, and Richard), had acquired interests in the property on the death of Amelia Bagdon in 1968. She was the grandmother of the Bagdons.

In *Delta I,* a judge of the Probate Court, after trial, determined that the parcels could not be "divided advantageously," see G. L. c. 241, § 31, and ordered a sale. On appeal, we decided that the judge should not have reached this conclusion until he had first found the fair market value of each of the parcels that is the subject of the petition for partition. Once those market values had been found, the judge was to address anew the question of an advantageous division. *Delta I* at 339.

On the basis of further proceedings, which included the taking of additional evidence, the probate judge concluded that an advantageous division of the land could be made. The judge specified the division in kind to be made and ordered Delta to pay to the Bagdons an owelty of $25,400.[3] Again, the Bagdons appealed. We decided that the capitalization of net income valuation accepted by the judge was faulty because it was based solely on the gravel that could be mined from the thirty-seven acre parcel and from twenty-five acres of the 101 acre parcel and that the judge had failed to consider the residual value of

---

[2]Delta sells all its product to an affiliated company, Warner Brothers, Inc.; the latter processes the gravel and sells it to users.

[3]An owelty is the sum of money to be paid in order to equalize a disproportionate division of property. *Delta I* at 338 n.7.

the land after gravel had been removed. Again, we remanded for further proceedings. *Delta Materials Corp.* v. *Bagdon*, 43 Mass. App. Ct. 307, 309-311 (1997) (*Delta II*).

A different judge conducted the third proceeding; the original judge had retired. For purposes of analysis and division, he broke the 101 acre parcel down to a commercial tract, the "plateau" (a fan-shaped parcel north of the thirty-seven acre tract), and a remainder tract of seventy-three acres. Together with the one acre parcel and the thirty-seven acre parcel there were, therefore, five components of the over-all property to consider and value. In considering the evidence he had received, the judge placed the greatest emphasis on the evaluation approaches and opinions of market value from each side's appraiser. The judge found the methodology of the Bagdons' appraiser flawed and occasionally self-contradictory. Accordingly, the judge relied more on the opinions of value of the appraiser called by Delta. "Faced with a battle of experts, the fact finder may accept one reasonable opinion and reject the other." *Fechtor* v. *Fechtor*, 26 Mass. App. Ct. 859, 863 (1989). See *Delta I* at 335.

The judge found that the values of the five components of the property were as follows:

| | | |
|---|---|---:|
| 1. | The 101 acre parcel | |
| | (a) Plateau | $705,000 |
| | (b) Commercial tract | $135,000 |
| | (c) Remainder tract | $292,000 |
| 2. | Thirty-seven acre parcel | $640,000 |
| 3. | One acre parcel | $ 30,000 |
| | Total | $1,802,000 |

Of that total, Delta's four-fifths interest came to $1,441,600, and the Bagdons' one-fifth interest came to $360,400. As the value of the thirty-seven acre parcel and the plateau each exceeded $360,400, the judge concluded that advantageous division required those parcels to be awarded to Delta. In addition, both the thirty-seven acre parcel and the plateau were closest to Delta's existing gravel operation. From the remainder tract in the 101 acre parcel, the judge awarded twenty-four acres that afforded right-of-way access to the plateau.

The Bagdons, the judge decided, should receive the one acre residential parcel and the three acre commercial tract that was a component of the 101 acre parcel. Those areas abutted other land the Bagdons possessed. In addition, the Bagdons were to receive forty-nine acres from the 101 acre parcel, a portion that included land on which the Bagdons maintained two or three storage barns. In dollar terms, the division lined up as follows:

| To Delta: | |
|---|---|
| Thirty-seven acre parcel | $640,000 |
| Plateau (twenty-five acres) | $705,000 |
| Twenty-four acres from remainder tract | $ 96,000 |
| Total | $1,441,000 |
| To the Bagdons: | |
| One acre parcel | $ 30,000 |
| Commercial parcel | $135,000 |
| Forty-nine acres from remainder tract | $196,000 |
| Total | $361,000 |

Since the division came just about to four-fifths and one-fifth, there was no owelty award.

1. *Refusal to include enhancement effect in valuation.* The valuations that the judge arrived at were based on the highest price that a third party would pay for the land in a free and open market, see *Epstein* v. *Boston Hous. Authy.*, 317 Mass. 297, 299 (1944), rather than the value of the property to the parties. *Delta II* at 309. In doing so, the judge acknowledged that Delta might be willing to pay an enhanced price because the thirty-seven acre parcel and the plateau parcel were located in proximity to Delta's existing extraction equipment and road system so that it could mine gravel in those areas at less cost than a gravel operator who would have to start from scratch in building an extraction infrastructure.

Refusal to consider the enhancement factor, the Bagdons urgently argue on appeal, was an error of law requiring reversal. The particular utility of the adjacent land to Delta, the Bagdons contend, was a market factor, and declining to take it into account produces a windfall for Delta. There is a flaw in this line of reasoning. Just because the land has special value for Delta does not compel it to pay more than others would pay in a free

and open market. Persons may covet a property, but if the state of the evidence is that no one else is in a position to pay more than market value, there is no reason for the hypothetical covetous buyer to pay anything more than fair market value, with perhaps a marginal premium. That is the lesson of cases such as *Suburban Land Co.* v. *Arlington*, 219 Mass. 539, 541 (1914), and *Epstein* v. *Boston Housing Authy.*, *supra*. Had there been evidence of competition by third parties in bidding for the property to be partitioned, enhancement value to Delta would be a sound valuation factor. The judge found, however, that any gravel excavator who acquired the land allocated to Delta would be able to mine 59.2 percent of the gravel which Delta, with its location and infrastructure advantages, could mine. There was, therefore, no competitive pressure to trigger an enhancement effect. The judge did not err in deciding not to give weight, in these circumstances, to the enhancement factor.

2. *Whether changes in town by-laws limited potential for gravel extraction.* If newly adopted land use by-laws restricted the gravel that could be extracted, then the highest and best use of the property to be partitioned might be something other than gravel extraction, resulting in lower valuations of some of the major component parts. That might make it possible to allocate to the Bagdons some of the gravel-rich land where they now farm (i.e., the plateau).

In the second evidentiary hearing, conducted in 1994, gravel extraction was considered by both parties as the highest and best use of the thirty-seven acre parcel. As to the twenty-five acre parcel called the plateau, the issue of the highest and best use was contested by the Bagdons.[4] The probate judge found that gravel extraction was, indeed, the highest and best use of the plateau. In *Delta II*, at 311-312, we said that, on the basis of the record, this finding lay within the discretion of the judge.[5]

In the third proceeding, conducted in 1999, the Bagdons offered evidence that the town of Sunderland had adopted

---

[4]The plateau, it will be recalled, is part of the 101 acre parcel.

[5]In the absence of extraordinary circumstances, that holding cannot be disturbed. See, e.g., *King* v. *Driscoll*, 424 Mass. 1, 1, 7-8 (1996). The Bagdons' argument is that a material change in circumstances, specifically new town by-laws, supports a modification of that holding.

watershed regulations in 1995 that made the prospects for obtaining a special permit to extract gravel on the plateau at least more remote and, possibly, had reduced them to zero. In land valuation cases, regulatory inhibitions and the possibility that those bars may be lifted is a proper subject of contest at trial; i.e., a party may, through proof, establish the likelihood of administrative relief. *Skyline Homes, Inc.* v. *Commonwealth,* 362 Mass 684, 686-688 (1972). The Bagdons call particular attention to § 125-16.2B(4)(k)(4) of the town by-laws, introduced by an amendment effective April 28, 1995, i.e., after the 1994 hearing. That amendment provided that in the watershed protection overlay district, in which the plateau is located, "[g]ravel operations may not be developed or expanded into forest areas of the Watershed Protection District." The judge found that there was insufficient evidence that all of the plateau was a forest area within the by-law definition. Indeed, the record supports a finding that some parts of the plateau were tree-covered and others were not. There was testimony, which the probate judge could have credited, that Delta understood it could not excavate the area that had tree cover and had taken this into account in its projections of where and how much gravel it could excavate.

The judge found that, at the time of the third proceeding, Sunderland was considering a by-law revision authorizing a grant for a special permit for "gravel mining operations" provided that "a plan is cooperatively developed between the applicant and any affected abutters that addresses hours of operation, protection of groundwater, exterior lighting, storage of hazardous materials, landscaping and berms to reduce noise, and phasing and reclamation standards." In its draft form, the new by-law did not, in terms, modify the forest-area limitation of the watershed protection overlay district, but the judge could consider that the town was engaged in the process of devising comprehensive gravel removal by-laws that would favorably affect Delta's use of its land. The narrow question before the judge was whether zoning by-law changes that had occurred or were contemplated marked a material change in circumstances bearing on the highest and best use of the plateau. The judge was warranted in finding that such a material change had not

occurred. The judge's findings of fact on this score were not clearly erroneous. See Mass.R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996).

3. *Claim of error in market share analysis.* For purposes of his value analysis, the appraiser called by Delta assumed the Sunderland and environs market for bank-run gravel would absorb about 65,000 cubic yards per year from someone who controlled the thirty-seven acre parcel and the plateau.[6] Continuing to oscillate between claims that the judge found market values that were either too high or too low, the Bagdons protest that Robert H. Warner, Jr., the president and treasurer of Delta, had testified that his company (he was referring to Warner Brothers, Inc., which is the paving and construction business) removed between 250,000 to 275,000 cubic yards for all gravel, bank-run and processed. Processed gravel, of course, is not removed and it is likely there was confusion in the testimony between what Warner Brothers, Inc., extracted and what it sold. The dissonance in the evidence, in any event, is hardly of major importance. The appraiser was entitled to make market judgments. The expert witnesses were subject to cross-examination and, as we have said before, the judge was entitled to choose the expert opinion that he thought the more cogent.

*Interlocutory decree pursuant to*
*G. L. c. 241, § 10, affirmed.*

---

[6]Bank-run gravel is the raw material dug out, as opposed to processed gravel, which is crushed and screened.