CYPHER, J.
**175 This case presents reported questions from a judge in the Probate and Family Court Department pursuant to G. L. c. 215, § 13, in connection with the judge's *55 denial of the parties' competing motions for summary judgment. At issue is the meaning of a particular provision of G. L. c. 191, § 15 ( § 15 ), the Commonwealth's elective share statute.
Section 15 is intended to prevent spousal disinheritance, either by inadvertence or design. See Bongaards v. Millen, 440 Mass. 10, 32, 793 N.E.2d 335 (2003). See generally Restatement (Third) of Property: Wills and Other Donative Transfers § 9.1 comment b (2003); 2 T.H. Belknap, Newhall's Settlement of Estates and Fiduciary Law in Massachusetts § 20:1 (5th ed. 1994). To that end, the statute provides a mechanism by which a dissatisfied surviving spouse can waive the provisions of a deceased spouse's will and take a statutorily prescribed share of the decedent's estate, with "the fractional portions and the nature of the interest depending on the presence or absence of issue and other kindred." Bongaards, supra at 20, 793 N.E.2d 335. For example, if the decedent left issue, then the surviving spouse is entitled to one-third of the decedent's real property and one-third of the decedent's personal property, except that
"if he or she would thus take real and personal property to an amount exceeding [$25,000] in value, he or she shall receive, in addition to that amount, only the income during his or her life of the excess of his or her share of such estate above that amount, the personal property to be held in trust and the real property vested in him or her for life" (emphases added).
G. L. c. 191, § 15. The dispute in this case centers on the nature of a surviving spouse's interest in a deceased spouse's real property where the income-only limitation applies, i.e., where a surviving spouse's shares of a deceased spouse's personal and real property, taken together, exceed $25,000 in value. We conclude that, to the extent a surviving spouse's shares of the decedent's **176 estate exceed $25,000, § 15 reduces his or her interest in the real property from outright ownership to a life estate. As a result, we vacate the judge's denial of the parties' competing motions for summary judgment and remand for reconsideration consistent with this opinion.
Background. The following facts are undisputed. Raymond Ciani died testate in 2015. He was survived by his wife, Susan Ciani, and his four adult children from a previous marriage, one of whom is also the personal representative of his estate.
Raymond did not make provisions for Susan in his will.[2] Susan timely claimed her elective share of Raymond's estate in accordance with § 15. She then filed three petitions for partition in the Probate and Family Court, seeking to force the sale of three separate parcels of real property Raymond had owned at the time of his death.
In these petitions Susan represented to the court that she held a life estate in an undivided one-third of each property and that Raymond's children were tenants in common subject to her life estate. Raymond's children sought dismissal of the petitions as well as a declaration of the judge that, among other things, Susan does not have a right to petition for partition because § 15 does not afford Susan a life estate. Thereafter, they moved for summary judgment, asserting that the only contested issue was one of statutory interpretation. Susan cross-moved for summary judgment and sought a similar declaration providing that she does have a right to petition for partition because § 15 *56 does afford her a life estate in an undivided one-third of Raymond's real property.
The judge denied both motions, stating that an absence of edifying case law interpreting the specific provision of § 15 at issue precluded her from determining whether either side was entitled to judgment as a matter of law.[3] The judge then reported that ruling to the Appeals Court in accordance with G. L. c. 215, § 13, and framed three additional questions:
"1. Whether a Surviving Spouse has standing to bring an action for petition for partition of real estate, when her sole interest in the subject property originates from G. L. c. 191, § 15 ?
**177 "2. What benefits and/or obligations does the phrase 'vested in him or her for life' as contained in G. L. c. 191, § 15, convey to the Surviving Spouse? Specifically, is a one-third life estate in the real estate created in favor of the Surviving Spouse; and, does the Surviving Spouse have a duty to contribute to the expenses of real estate during her lifetime?
"3. Upon the sale of real estate of which the Surviving Spouse holds an interest pursuant to G. L. c. 191, § 15, what portion of the proceeds, if any, should be distributed to her free from trust?"
We took up the matter on direct appellate review.
Discussion. 1. Standard of review. This matter comes to us in an unusual posture, in that both motions for summary judgment were denied notwithstanding an undisputed factual record. Indeed, where the single issue raised was one of statutory interpretation, one of the parties was entitled to judgment as a matter of law. Modica v. Sheriff of Suffolk County, 477 Mass. 102, 103, 74 N.E.3d 1233 (2017). In addition, although G. L. c. 215, § 13, permits a judge to report specific questions of law in connection with an interlocutory finding or order, the basic issue to be reported is the correctness of that finding or order.[4] Commonwealth v. G.F., 479 Mass. 180, 189 n.9, 93 N.E.3d 816 (2018). The reported ruling in this case did not resolve the parties' issue one way or the other, leaving us little to review. This is not an appropriate use of G. L. c. 215, § 13, and we do not encourage it. Nevertheless, we will endeavor to answer the reported questions, anticipating that our discussion will provide some much-needed guidance in this area.
As an initial matter, the parties agree that § 15 affords Susan an **178 interest in one-third *57 of Raymond's personal property and one-third of his real property. They also agree that, taken together, Susan's shares of Raymond's property exceed $25,000 in value and that, thus, she is entitled to take $25,000 outright. The agreement ends there. Raymond's children propose that, to the extent Susan's shares of Raymond's property exceed $25,000, § 15 reduces her interest in the real property from an outright ownership interest to an interest in the income produced by the property for her life. Susan posits that, to the extent her shares of Raymond's property exceed $25,000, § 15 reduces her interest in the real property from an outright ownership interest to a life estate. In our view, the resolution of this dispute will in effect provide the answer to all the reported questions.
We interpret a statute according to the intent of the Legislature, which we ascertain from all the statute's words, "construed by the ordinary and approved usage of the language" and "considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished" (citation omitted). Harvard Crimson, Inc. v. President & Fellows of Harvard College, 445 Mass. 745, 749, 840 N.E.2d 518 (2006). See generally G. L. c. 4, § 6, Third. "Ordinarily, where the language of a statute is plain and unambiguous, it is conclusive as to legislative intent" (citation omitted). Sharris v. Commonwealth, 480 Mass. 586, 594, 106 N.E.3d 661 (2018). That said, we will not adopt a literal construction of a statute if the consequences of doing so are "absurd or unreasonable," such that it could not be what the Legislature intended. Id., quoting Attorney Gen. v. School Comm. of Essex, 387 Mass. 326, 336, 439 N.E.2d 770 (1982). Where the language is not conclusive, "we may turn to extrinsic sources, including the legislative history and other statutes, for assistance in our interpretation" (quotation and citation omitted). Commonwealth v. Wynton W., 459 Mass. 745, 747, 947 N.E.2d 561 (2011). See Commonwealth v. Gernrich, 476 Mass. 249, 252, 67 N.E.3d 1196 (2017). Our principal objective is to ascertain and effectuate the intent of the Legislature in a way that is consonant with sound reason and common sense. Commonwealth v. Curran, 478 Mass. 630, 633-634, 88 N.E.3d 862 (2018).
2. Statutory language. Section 15 provides that where the decedent has left issue, the surviving spouse's statutory share is "one third of the personal and one third of the real property," except that[5]
**179 "if he or she would thus take real and personal property to an amount exceeding [$25,000] in value, he or she shall receive, in addition to that amount, only the income during his or her life of the excess of his or her share of such estate above that amount, the personal property to be held in trust and the real property vested in him or her for life" (emphasis added).
The statute further instructs that
"the [$25,000], above given absolutely shall be paid out of that part of the personal property in which the husband or wife is interested; and if such part is insufficient the deficiency shall ... be paid from the sale or mortgage in fee ... of that part of the real property in which he or she is interested. Such sale *58 or mortgage may be made either before or after such part is set off from the other real property of the deceased for the life of the husband or widow" (emphasis added).
The parties have suggested competing interpretations. Raymond's children maintain that the phrase "only the income during his or her life" modifies both "personal property to be held in trust" and "real property vested in him or her for life" such that we must read the income-only limitation this way: the surviving spouse has a right to the income generated by the trust that holds the personal property and a right to the income generated by the real property, which is vested in the surviving spouse for life. This formulation, while not wholly inconsistent with our rules of statutory or grammatical construction, see Moulton v. Brookline Rent Control Bd., 385 Mass. 228, 230-231, 431 N.E.2d 225 (1982) (construction of modifying clauses), raises some concerns.
First, there is no impetus for the Legislature's specific instruction that the right to the income from the real property be "vested" in the surviving spouse "for life," as the Legislature already stated as much in the immediately preceding clause. The unavoidable result is that the words "vested" and "for life" are rendered superfluous. This runs contrary to the basic tenet of statutory construction that we must strive to give effect to each word of a statute so that no part will be inoperative or superfluous. See **180 Commonwealth v. Gardner, 480 Mass. 551, 560, 106 N.E.3d 642 (2018) ; Camargo's Case, 479 Mass. 492, 498, 96 N.E.3d 673 (2018). Had the Legislature intended that the surviving spouse's interest in each type of property be limited in precisely the same manner, its instruction that the surviving spouse may take "only the income during his or her life of the excess of his or her share" would have sufficed for that purpose. That the Legislature provided additional instruction regarding each type of property and in so doing chose to use different words strongly suggests that it intended to convey a different meaning. Commonwealth v. Williamson, 462 Mass. 676, 682, 971 N.E.2d 250 (2012) (Legislature's use of different language strongly suggests intent to convey different meaning). See MacLaurin v. Holyoke, 475 Mass. 231, 240, 56 N.E.3d 1254 (2016) (differences in common meaning underscore that Legislature did not intend terms to be functionally synonymous).
Second, this construction cannot be reconciled with the Legislature's subsequent instruction:
"the [$25,000], above given absolutely shall be paid out of that part of the personal property in which the husband or wife is interested; and if such part is insufficient the deficiency shall ... be paid from the sale or mortgage in fee ... of that part of the real property in which he or she is interested. Such sale or mortgage may be made either before or after such part is set off from the other real property of the deceased for the life of the husband or widow" (emphasis added).
G. L. c. 191, § 15. If the Legislature in fact intended for a surviving spouse to have only a fractional interest in the income produced by the real property, then it would be of no consequence what portion of the real property made up the surviving spouse's share. Indeed, there would be no need to set off the surviving spouse's share for his or her life. The fact that the statute anticipates that the surviving spouse's physical share of the real property will be "set off" at some point seriously undermines this construction. See Matter of E.C., 479 Mass. 113, 118, 92 N.E.3d 724 (2018) (statute should be read as whole to *59 produce internal consistency); Felix F. v. Commonwealth, 471 Mass. 513, 516, 31 N.E.3d 42 (2015) (same).
We are not inclined to adopt a construction that results in surplusage and internal inconsistency. Consequently, we read the statute this way: the first clause ("only the income during his or her life") limits the surviving spouse to an interest in the "income **181 only," and the second clause ("the personal property to be held in trust and the real property vested in him or her for life") describes how that limitation is to be achieved for each type of property -- the personal property is to be held in trust and the real property is to be vested in the surviving spouse for life.
Read in this way, the phrase "vested in him or her for life" is significant rather than surplusage. It directs how the surviving spouse's share of the real property is to be held: by the surviving spouse, for life. The phrase "for life" connotes an ordinary life estate. See, e.g., Hershman-Tcherepnin v. Tcherepnin, 452 Mass. 77, 87-88, 891 N.E.2d 194 (2008), and cases cited therein. See also Blanchard v. Blanchard, 1 Allen 223, 225, 83 Mass. 223 (1861) (testamentary gift of income of real estate "for life" construed as conveying life estate); Larned v. Bridge, 17 Pick. 339, 342, 34 Mass. 339 (1835) (testamentary gift of "use and benefit" of real estate for life construed as vesting estate for life); H.J. Alperin, Summary of Basic Law § 14.9, at 671-672 (5th ed. 2017) (construction "to B for life" sufficient to create life estate in B); Restatement (Third) of Property: Wills and Other Donative Transfers § 24.5 (2011) (same). In addition, the word "vest" is commonly understood to confer property ownership. See Black's Law Dictionary 666, 1794 (10th ed. 2014) (defining "vest" as verb meaning "[t]o confer ownership [of property] on a person ... [t]o invest [a person] with the full title to property ... [t]o give [a person] an immediate, fixed right of present or future enjoyment ... [t]o put [a person] into possession of land by the ceremony of investiture" and "vested estate" as "[a]n estate with a present right of enjoyment or a present fixed right of future enjoyment"). The fact that the Legislature used the words "for life" and "vested" with respect to the surviving spouse's interest in the real property (and did not use the same words with respect to his or her interest in the personal property) supports the conclusion that the Legislature intended for the surviving spouse to have an ownership interest in the real property for life, not merely an interest in the income produced by the real property. See MacLaurin, 475 Mass. at 241, 56 N.E.3d 1254 ; Williamson, 462 Mass. at 682, 971 N.E.2d 250.
We also note that it is not unusual for a life estate to arise as a matter of law. See Alperin, supra at § 14:9, at 671 (life estates may be created by deed or will, or come into existence by operation of law). See, e.g., G. L. c. 189, § 1, repealed by St. 2008, c. 521, § 6 (surviving spouse who has elected to take dower shall hold "for life" one-third of real property owned by deceased spouse at death). See also **182 Sears v. Sears, 121 Mass. 267, 268 (1876) (operative intestacy law providing widow one-half of decedent's real property "during her natural life" conveyed life estate).
In fact, the Legislature's use of the phrase "for life" to convey a life estate in a separate but related statute regarding tenancy by dower supports the conclusion that the Legislature intended for § 15 to convey a life estate also.[6] See *60 Spencer v. Civil Serv. Comm'n, 479 Mass. 210, 217, 93 N.E.3d 840 (2018) ; Meikle v. Nurse, 474 Mass. 207, 211, 49 N.E.3d 210 (2016). In short, the Legislature is not unfamiliar with life estates, their unique characteristics, and the words which are commonly used to convey them. See, e.g., G. L. c. 189, § 1, repealed by St. 2008, c. 521, § 6 (surviving spouse who has elected to take dower shall hold "for life" one-third of real property owned by deceased spouse at death); G. L. c. 241, § 1 (life tenant is entitled to partition for so long as his or her estate endures); G. L. c. 242, § 1 (successors may maintain action against life tenant for waste). As such, we are confident that the Legislature chose its words carefully and with knowledge of their significance in this context.
This construction also promotes internal consistency. If the Legislature intended for the surviving spouse to take a life estate, which entails a right of possession as well as a right to income and profits, then it is of consequence what portion of the real property makes up the surviving spouse's share.[7] The fact that the statute anticipates that the surviving spouse's physical share of the real property will be set off supports the conclusion that the Legislature intended for the surviving spouse to take a life estate. See Matter of E.C., 479 Mass. at 118, 92 N.E.3d 724 ; Felix F., 471 Mass. at 516, 31 N.E.3d 42.
**183 Finally, we note that affording the surviving spouse a life estate is consistent with the cause of § 15's enactment and the main object to be accomplished. A life estate is a well-established real property ownership interest with clearly defined rights and obligations, as well as an ascertainable value. The income interest suggested by the children is not an ownership interest at all. It is not readily apparent, and the children do not endeavor to explain, what such an interest would entail. For example, if the property did not produce income, as is the case in many instances, we do not see that the surviving spouse would have any meaningful recourse. The statute does not oblige the owners of the real property to use the property in a way that generates income, and, in stark contrast to those provisions related to the personal property, it does not call for the property to be held in trust. The value of the surviving spouse's interest would be at the mercy of the property owners, in this case the children, who would exert total control over the property. This cannot be what the Legislature intended. Indeed, it would be inconsistent to prevent one spouse from disinheriting the other as a matter of public policy, but allow the offending spouse's heirs to do what he or she could not.
3. Legislative history. The statute's legislative history also bolsters the conclusion that § 15 conveys a life estate. See *61 Kain v. Department of Envtl. Protection, 474 Mass. 278, 286, 49 N.E.3d 1124 (2016), quoting Oxford v. Oxford Water Co., 391 Mass. 581, 588, 463 N.E.2d 330 (1984) ("our interpretation of statutes is not restricted to determining only their 'simple, literal or strict verbal meaning' but also considers their 'development, their progression through the legislative body, the history of the times, prior legislation, contemporary customs and conditions and the system of positive law of which they are part"). See also Spencer, 479 Mass. at 216, 93 N.E.3d 840 ("time and again we have stated that we should not accept the literal meaning of the words of a statute without regard for that statute's purpose and history" [citation omitted] ).
The first conception of the elective share statute simply stated a widow's right to waive the provisions made for her in her husband's will and claim her dower instead, which afforded her a life estate in a prescribed portion of her husband's real property.[8] St. 1783, c. 24, § 8. See St. 1783, c. 36, § 4; Peabody v. Minot, 24 Pick. 329, 333, 41 Mass. 329 (1834) (one-third of decedent's real estate **184 subject to widow's dower). See also St. 1833, c. 40; R.S. (1836), c. 60, § 11. In 1854, the Legislature reworked the statute entirely to allow a widow, upon waiver of the provisions of her husband's will, to take
"such portion of the real and personal estate as she would have been entitled to if her husband had died intestate: provided, however, that [she] shall not, in any such case, be entitled to receive more than [$10,000] out of the personal estate" (emphasis added).
St. 1854, c. 428. See Atherton v. Corliss, 101 Mass. 40, 46 (1869). See also, e.g., Sullings v. Richmond, 13 Allen 277, 280, 95 Mass. 277 (1866) ; Brigham v. Maynard, 9 Gray 81, 81-82, 75 Mass. 81 (1857). The $10,000 limit was eliminated in 1860, St. 1860, c. 24, only to be revived in a different form in 1861:
"if the share of the personal estate to which she would thus become entitled shall exceed the sum of [$10,000], she shall in such case be entitled to receive in her own right the said amount of [$10,000], and to receive the income only of the excess of said share above said sum of [$10,000], during her natural life" (emphasis added).
St. 1861, c. 164, § 1. See Plympton v. Plympton, 6 Allen 178, 181, 88 Mass. 178 (1863). See also Cochran v. Thorndike, 133 Mass. 46, 47 (1882) (waiver statute entitled widow to "life interest only in the excess" of her share); Pollock v. Learned, 102 Mass. 49, 54 (1869) (intent of waiver statute's proviso is to give life estate in excess of share rather than absolute title). The Legislature did not include a requirement that the personal property be held in trust at this time; however, the Legislature did enact a subsequent section that provided that the probate court may appoint one or more trustees to "receive, hold and manage, during the lifetime of the widow," the excess of her share of the personal estate (if any). St. 1861, c. 164, § 2. That section remains substantively the same as the one in effect today. Compare St. 1861, c. 164, § 2, with G. L. c. 191, § 16.
At the turn of the Twentieth Century, the statute took on much the same form as that in effect today.[9] St. 1900, c. 450, § 7. Upon waiver of the will, a surviving husband or widow was entitled to
**185 "the same portion of the estate of the deceased, real and personal, that he *62 would have been entitled to if the deceased had died intestate; except that if he would thus become entitled to real and personal estate to an amount exceeding [$10,000] in value, he shall receive in addition to that amount only the income during his life of the excess of his share of such estate above that amount, the personal estate to be held in trust and the real estate vested in him for life, from the death of the deceased .... The amount not exceeding [$10,000] above given absolutely shall be paid out of that part of the personal estate in which the husband or widow is interested; and in case it is insufficient the remainder shall be paid from the sale or mortgage in fee ... of that part of the real estate in which he is interested, to be made either before or after it is set off for his life from the other real estate of the deceased."
Id. This version of the statute was codified in the General Laws in substantively the same form in 1921. See G. L. (Ter. Ed.) c. 191, § 15. See also R.L. 1902, c. 135, § 16; St. 1918, c. 257, § 384; St. 1919, c. 5; St. 1920, c. 2. It was not amended again until 1956, when the Legislature removed all reference to a surviving spouse's intestate share and provided instead that where a deceased spouse left issue, a surviving spouse would be entitled to take "one third of the personal and one third of the real property." St. 1956, c. 316, § 2. In 1964, the Legislature increased the threshold amount from $10,000 to $25,000. St. 1964, c. 288, § 1.[10]
This history reinforces that the Legislature intended to treat personal and real property differently from the outset. Indeed, the income-only limitation first applied to the decedent's personal property only. St. 1861, c. 164, § 1. It was several decades before the Legislature saw fit to correspondingly limit the surviving spouses' rights with respect to the decedent's real property. St. 1900, c. 450, § 7. At the time of that amendment, there was already a provision permitting the probate court to appoint one or more persons to hold the personal property in trust and manage the trust for the benefit of the surviving spouse. St. 1861, c. 164, §§ 1, 2. The fact that the Legislature did not enact an analogous provision for the management of the real property but instead **186 instructed that the excess of the surviving spouse's share thereof would be "vested" supports the conclusion that the Legislature intended for the surviving spouse to take an ownership interest in the excess. Moreover, the fact that the Legislature simultaneously anticipated that the surviving spouse's share would be "set off" for the duration of his or her life supports the conclusion that the Legislature intended to convey a life estate.[11]
In sum, we conclude that where a surviving spouse elects to waive the provisions of a deceased spouse's will in accordance *63 with § 15 and the decedent left issue, the surviving spouse is entitled to one-third of the decedent's personal property and one-third of the decedent's real property subject to the following limitation: if the surviving spouse's shares of the real and personal property together exceed $25,000 in value, then the surviving spouse takes $25,000 absolutely (first, from his or her share of the personal property, and then, if it is insufficient, from his or her share of the real property in the manner described therein) and a life estate in any remaining real property. In addition, any remaining personal property must be held in trust for the duration of the surviving spouse's life with the surviving spouse entitled to the income therefrom. This interpretation furthers the aim of the statute generally and best effectuates the Legislature's intent as we have ascertained it.[12] **187 4. Remaining questions. We turn now to the remaining questions posed by the Probate and Family Court. Susan, as a life tenant, has standing to petition for the partition of her share for as long as her estate endures. G. L. c. 241, § 1. Indeed, she holds an estate in possession, for life, in her share of the real property, and Raymond's children hold an estate in possession, absolutely, in the remaining property, as well as an estate in remainder in Susan's share. As a result, the parties are tenants in common as to their estates in possession and each has a right to a partition. See, e.g., Allen v. Libbey, 140 Mass. 82, 83, 2 N.E. 791 (1885) ; Sears, 121 Mass. at 269.[13]
In addition, Susan must refrain from committing waste and contribute to *64 the usual expenses attributable to life tenants in proportion to her share. See G. L. c. 242, § 1 ; Delano v. Smith, 206 Mass. 365, 370, 92 N.E. 500 (1910) (life tenants obligated "to treat the premises in such manner that no harm be done to them and that the estate may revert to those having an underlying interest undeteriorated by any wilful or negligent act"). See, e.g., Matteson v. Walsh, 79 Mass. App. Ct. 402, 406, 947 N.E.2d 44 (2011) (life tenant **188 committed waste by failing to maintain property and failing to pay property taxes); Stigum v. Johnson, Mass. Land Ct., No. 05 MISC. 308150, 2013 WL 773069 (Feb. 28, 2013) (life tenants obligated to pay proportionate share of property taxes and "all repairs necessary to keep the property in weathertight, undamaged condition").
Finally, Susan must be compensated for the value of her interest in any properties that have already been sold, whether from the proceeds of each sale or some other source. The value of her interest may be determined by reference to actuarial tables or by any other method preferred by the court making partition. See, e.g., In re Peirce, 483 B.R. 368, 375 (Bankr. D. Mass. 2012), and cases cited. Alternatively, the judge may, upon petition of either party, appoint a trustee to manage and invest the proceeds of the sale of Susan's share and pay the annual income to Susan for her life. See G. L. c. 241, § 35.
Conclusion. We vacate the Probate and Family Court judge's order denying the parties' respective motions for summary judgment and remand for reconsideration consistent with this opinion.
So ordered.

We refer to the parties by their first names to avoid confusion.

We agree that, though some version of G. L. c. 191, § 15 (§ 15 ), has been in effect for well over 200 years, guidance apposite to the specific issue raised in this case appears to be virtually nonexistent.

General Laws c. 215, § 13, permits a judge of the Probate and Family Court to report in two instances: "(1) where 'a case or matter is heard for final determination,' the judge 'may reserve and report the evidence and all questions of law therein for consideration of the appeals court, and thereupon like proceedings shall be had as upon appeal'; and (2) if after making an interlocutory ruling, the judge 'is of opinion that it so affects the merits of the controversy that the matter ought, before further proceedings [in the trial court], to be determined by the appeals court,' the judge may report his or her interlocutory ruling for immediate appellate review." Guardianship of D.C., 479 Mass. 516, 521 (2018), quoting G. L. c. 215, § 13. "The first path places an undecided case before the appellate court and puts the appellate court in a position to enter, or order the entry of, the final judgment in the first instance; the second path places before the appellate court the issue of the correctness of a significant interlocutory ruling made by a Probate and Family Court judge." Guardianship of D.C., supra.

If the decedent left kindred but no issue, the surviving spouse is entitled to $25,000 and one-half of the remaining personal and one-half of the remaining real property, subject to the income-only limitation. G. L. c. 191, § 15. If the decedent left neither issue nor kindred, the surviving spouse is entitled to take $25,000 and one-half of the remaining personal and one-half of the remaining real property absolutely. Id.

In 2008, the Legislature overhauled the law governing the probate process by adopting nearly the entire Uniform Probate Code (code). See St. 2008, c. 521; G. L. c. 190B. In so doing, the Legislature did away with the provisions providing for tenancy by dower. See G. L. c. 189, § 1, repealed by St. 2008, c. 521, § 6. The Legislature declined to adopt the code's extensive spousal share provisions, however, electing instead to leave G. L. c. 191, §§ 15 -16, intact.

The owner of a life estate in real property, as that term is commonly understood, has a right to possess the property as well as a right to all of the income generated by the property during his or her lifetime. See Hershman-Tcherepnin v. Tcherepnin, 452 Mass. 77, 88 n.20, 891 N.E.2d 194 (2008) ; Hinckley v. Clarkson, 331 Mass. 453, 454-455, 120 N.E.2d 285 (1954). See also Johnson v. Johnson, 7 Allen 196, 198, 89 Mass. 196 (1863) (life tenant was "in lawful possession" and had "the pernancy of the rents and profits of the entire estate"). See generally H.J. Alperin, Summary of Basic Law § 14.9, at 674 (5th ed. 2017) (life tenant is entitled to beneficial use of property and to rents, income, and profits from such use for duration of life estate).

It was not until 1833 that the same statute afforded widows a limited claim to their deceased husband's personal property. See St. 1833, c. 40.

In 1899, the Legislature expanded the scope of the statute to apply to surviving husbands in addition to surviving wives. St. 1899, c. 479, § 10.

The statute was amended once more in 1992, but this amendment is of no consequence to our analysis.

In Kramer v. Crosby, 266 Mass. 525, 530, 165 N.E. 686 (1929), this court noted that where a widow had waived the provisions of her deceased husband's will in accordance with R.L. 1902, c. 135, § 16, a precursor to § 15, and he had left kindred but no issue, she took no "interest in fee" in his real property; rather, she took "only a life estate which ended with her death." In that case, the judge had ordered, and the widow had assented to, partition of the decedent's estate. Id. at 528-529, 165 N.E. 686. The widow received $10,000 from the personal property, less an inheritance tax. Id. at 528, 165 N.E. 686. In addition, one-half of the real property, i.e., the widow's intestate share, was "assigned and set off" to her "for life." Id. Upon the widow's death, the sole taker under her will sought to challenge that partition on the ground that the widow's waiver was invalid. Id. at 529, 165 N.E. 686. We declined to disrupt the partition, in part, because the widow had assented to it. Id. at 531, 165 N.E. 686. Therefore, the nature of the interest that she took in the decedent's real property was not squarely in issue. Nonetheless, the discussion therein informs and is consistent with our conclusion in this case.

As a practical matter, § 15 is unwieldly and perplexing to apply in most instances. See 2 T.H. Belknap, Newhall's Settlement of Estates and Fiduciary Law in Massachusetts § 20:2 (5th ed. 1994), and examples provided therein. In addition, it is "woefully inadequate to satisfy modern notions of a decedent spouse's obligation to support the surviving spouse or modern notions of marital property," Bongaards v. Millen, 440 Mass. 10, 21, 793 N.E.2d 335 (2003) ; see Sullivan v. Burkin, 390 Mass. 864, 873, 460 N.E.2d 572 (1984), and, although not visited in detail here, the history of the statute leaves no doubt that it is decidedly gendered. See Note, Marital Property Reform in Massachusetts: A Choice for the New Millennium, 34 New Eng. L. Rev. 261, 266, 303, 339 (1999). In short, the statute is in desperate need of an update and we urge the Legislature to do so.

Susan has requested that the properties subject to her petitions be sold; however, we note that physical division is the primary and favored method of partition. See Delta Materials Corp. v. Bagdon, 33 Mass. App. Ct. 333, 337, 599 N.E.2d 250 (1992), S.C., 43 Mass. App. Ct. 307, 682 N.E.2d 927 (1997) and 59 Mass. App. Ct. 439, 796 N.E.2d 434 (2003). If the judge, upon careful findings, determines by a preponderance of the whole evidence that the property cannot be divided advantageously and without great inconvenience to the owners, then the governing statutes provide two additional means of resolving the matter. Id. at 338-339, 599 N.E.2d 250, citing Mello v. Mello, 322 Mass. 68, 69, 76 N.E.2d 9 (1947) (although task may be formidable, difficulty and complexity of just and equitable division do not alone justify resort to sale). First, the judge may "set off to any one or more of the parties, with his or their consent," "the whole or any part" of the co-owned property "upon payment by him or them to any one or more of the others of such amounts of money" to make the partition just and equal." G. L. c. 241, § 14. Second, the judge may order a public auction or private sale of "the whole or any part of the land," followed by a distribution of the proceeds so as to make the partition "just and equal." G. L. c. 241, § 31. See Delta Materials Corp., supra ("A sale is not simply an equally available alternative to a physical division; it may be ordered only after the court determines, upon careful findings, that advantageous division cannot be made"). To those options, we add another: private settlement. Indeed, "[m]any partition cases end that way." Duangpratheep v. Calnan, Mass. Land Ct., No. 17 MISC. 000246, 2018 WL 5621768 (Oct. 26, 2018) (order establishing terms of setoff).