SIDNEY A. FISHER *vs.* NATHAN CUSHING & another.

Suffolk.   Jan. 29. — March 1, 1883.   FIELD & W. ALLEN, JJ., absent.

It is no defence to an action against a person, into whose coal-hole in a sidewalk on a street in a city the plaintiff stepped and was injured, that the notice of the time, place and cause of the injury, required by the St. of 1877, *c.* 234, § 3, to be given by a person injured by a defect in a highway to the "persons by law obliged to keep said highway in repair," was not given to the defendant.

HOLMES, J.   The plaintiff was hurt by stepping into the defendants' coal-hole, in a sidewalk on Blackstone Street in Boston.   At the trial, the defendants asked for a ruling that, having given them no notice in writing of the time, place and cause of his alleged injury within thirty days thereafter, he could not maintain this action.   This was refused by the court, and is the only question before us, all other exceptions being expressly waived.

The act on which the defendants rely is the St. of 1877, *c.* 234, §§ 2, 3.   The second section gives an action for bodily injuries, &c., suffered through defects in highways, town ways, causeways or bridges, against the " county, town, place or persons by law obliged to repair the same."   The third section requires that the person injured shall " within thirty days thereafter give notice to the county, town, place or persons by law obliged to keep said highway, town way, causeway or bridge in repair, of the time, place and cause of the said injury."   The third section is new, but the second goes back, through the Gen. Sts. *c.* 44, § 22, and the Rev. Sts. *c.* 25, § 22, to the St. of 1786, *c.* 81, § 7; and the defendants' argument is, that in 1786 there were no " persons by law obliged " to keep highways in repair, unless the words be taken to refer to the common law obligation upon which they are now sued; that the same words in the second section of the St. of 1877 must have the same meaning that they had in the original act, and therefore also in the third section entitling such persons to notice.

But we do not so interpret either the original or the following acts.   The sections imposing liability to an action, from the St. of 1786 down, have been part of a statutory scheme creating or

regulating a public duty to keep the highways in repair. The whole scope of that scheme shows that it is directed to the general public duty, and that it has no reference to the common law liability for a nuisance. The acts first create the obligation to repair, and then give an action for neglect of it. The obligation of the " persons " is the same obligation as that of the counties or towns mentioned alternatively with them. But the obligation of the defendants cannot properly be called an obligation to repair the highway. At most, it only presents itself proximately in that form, but really it lies farther back. It is a duty not to dig or maintain pits in the highway. Such pits can be prevented from being a nuisance by what may be called, by a stretch of language, repairing the highway. But the defendants' duty is confined to the specific spot where the pit is, — exists only by reason of the pit, and not as part of a general duty to repair, — and in truth their liability is not for failing to repair, but for maintaining the pit. If the words relied on by the defendants had applied to cases like theirs, there was no reason why the double damages given by the earlier acts, when recovered from a town, should not have been recovered over from the actual wrongdoer who created the nuisance; whereas in the very cases cited for the defendants the towns or cities that had paid double damages were only allowed to recover single damages, on the ground that that was the extent of the defendant's liability to the party injured. *Lowell* v. *Boston & Lowell Railroad*, 23 Pick. 24, 35. *Lowell* v. *Short*, 4 Cush. 275.

The mention of " persons " in the statute, alongside of counties and towns obliged to repair, is easily explained. The outline of our scheme was of ancient date and English origin. In England, while parishes were generally bound to repair highways and bridges, a person might be, *ratione tenuræ*, or otherwise. The language of our act was probably suggested by that of earlier legislation in England. But we cannot say, and probably the Legislature of 1786 could not have said, that there were no cases in the Commonwealth where persons other than counties or towns were bound to keep highways in repair. The words " where other sufficient provision is not made therefor," in the first section of the St. of 1786, imposing the duty on

the inhabitants of towns, suggests that there were such cases. Even if there were not, it was a natural precaution to use the words.                              *Exceptions overruled.*

A. A. *Ranney & W. B. French*, for the defendants.

B. *Wadleigh & F. L Wellman*, for the plaintiff.