GANTS, C.J.
*674 **705 On February 22, 2013, the plaintiff, Julio Acevedo, allegedly slipped and fell while descending stairs at his apartment in a public housing development in Framingham known as Musterfield at Concord Place (property), and suffered serious injuries. He filed a complaint in the Superior Court alleging various claims for damages against three defendants: the Framingham Housing Authority (authority); Musterfield Place, LLC, a "controlled affiliate" of the authority, which owns the property (owner);[2] and FHA Musterfield Manager, LLC, the managing agent for the owner (manager). The owner and manager moved **706 for partial summary judgment, seeking a ruling that they should be deemed public employers under the Tort Claims Act (act), G. L. c. 258, § 2, and therefore may not be liable for damages in excess of $100,000. The judge denied the motion, concluding that the act "clearly defines the scope of a public employer," and did not include controlled affiliates within that definition. Recognizing that the issue whether controlled affiliates are deemed public employers under the act is a matter with "potentially broad impact throughout the Commonwealth" and that it has not been addressed by any other Massachusetts court, the judge reported his decision to the Appeals Court pursuant to Mass. R. Civ. P. 64 (a), as amended, 423 Mass. 1410 (1996), and stayed the action until the appeal is decided. We conclude that neither a controlled affiliate nor the manager of a controlled affiliate is a "public employer" as defined in the act, and therefore, we affirm the denial of the defendants' motion for partial summary judgment.
Background. In 2009, the authority determined that the property, a 110-unit public housing development in Framingham then owned by the authority (and previously known as the Pearl Harbor Development), was in need of substantial rehabilitation. Because the estimated costs to rehabilitate the property exceeded the funding available to the authority from the Department of Housing and Community Development (department), the authority sought financing through five sources, one of which was an equity investment by investors seeking to take advantage of low income housing tax credits made available through the Federal Low Income Housing Tax Credit (LIHTC) program.
The LIHTC program, created by the Tax Reform Act of 1986 and incorporated in the Internal Revenue Code, see 26 U.S.C. § 42 (2012), is a Federal tax subsidy program designed to promote the construction and rehabilitation of rental housing that is affordable to low and moderate income households. Under the LIHTC program as administered in Massachusetts, *675 the Internal Revenue Service allocates Federal tax credits to the department. The department, in turn, allocates those tax credits to "qualified low-income housing projects"-that is, residential rental properties that are rent-restricted and have a certain minimum share of rental units set aside for low and moderate income households. See 26 U.S.C. § 42(g), (h)(3). See also **707 760 Code Mass. Regs. § 54.05(1) ("Any person or entity [of whatever type] with an ownership interest in a qualified Massachusetts project is eligible to receive an allocation of Massachusetts standard [tax credits under the LIHTC program] with respect to such project"). Private developers of these projects typically use the tax credits allocated to them through the LIHTC program as an incentive to attract capital from private investors to help pay for the construction, acquisition, and rehabilitation of affordable housing. These developers "sell" the tax credits to private investors, usually through a syndicator, in exchange for an equity investment in the housing project. See J. Khadduri, C. Climaco, & K. Burnett, United States Department of Housing and Urban Development, What Happens to Low-Income Housing Tax Credit Properties at Year 15 and Beyond?, at 2 (2012).
Local housing authorities seeking to rehabilitate public housing cannot make direct use of these Federal tax credits because they are exempt from Federal tax liability and, therefore, have no Federal tax liability that they can diminish by receiving Federal tax credits under the LIHTC program. To enable local housing authorities to make use of Federal funding that would otherwise be unavailable to them, the department promulgated regulations permitting them to transfer ownership of a housing project in need of substantial rehabilitation to a "controlled affiliate" of the local housing authority, defined as "[a]n entity with the power to own and manage residential real property of which and over which actual and legal control shall be in [a local housing authority]." See 760 Code Mass. Regs. §§ 4.01, 4.15 (2017). The controlled affiliate that owns the property may claim these tax credits annually over a period of ten years, thereby offsetting the Federal tax liability of its investors, see 26 U.S.C. § 42(a), (f)(1), but must continue to comply with affordability requirements for the low and moderate income renters of the property units for a period of fifteen years to preserve those tax credits. See 26 U.S.C. § 42(c)(2), (i)(1), (j). For any LIHTC project allocated tax credits after 1989, the owner must also agree to comply with the affordability restrictions for an additional fifteen years, known as the extended use period. See 26 U.S.C. § 42(h)(6).
Here, in order to obtain Federal tax credits pursuant to the LIHTC program, the authority submitted an application to the department to transfer ownership of the property to a controlled affiliate. In the fall of 2009, after the department approved the authority's application, the authority sold the property, pursuant **708 to 760 Code Mass. Regs. § 4.15, to its controlled affiliate, the owner, for $6.5 million. The owner has three members: RSEP Holding, LLC, the "investor," with a 99.99 per cent ownership interest; the manager, the "managing member," with a 0.009 per cent ownership interest; and Red Stone Equity Manager, LLC, the "special member," with a 0.001 per cent ownership interest.[3] *676 The manager is comprised of only one member-the authority. Therefore, although the authority no longer owns the property, the authority (through the manager) continues to manage it.
Discussion. Under G. L. c. 258, § 2, of the act, "[p]ublic employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances, except that public employers shall not be liable to levy of execution on any real and personal property to satisfy judgment, and shall not be liable for interest prior to judgment or for punitive damages or for any amount in excess of $100,000." The provisions of the act apply only to a "public employer," which is defined in G. L. c. 258, § 1, as
"the [C]ommonwealth and any county, city, town, educational collaborative, or district, including the Massachusetts Department of Transportation, the Massachusetts Bay Transportation Authority, any duly constituted regional transit authority and the Massachusetts Turnpike Authority and any public health district or joint district or regional health district or regional health board established pursuant to the provisions of [ G. L. c. 111, § 27A or 27B ], and any department, office, commission, committee, council, board, division, bureau, institution, agency or authority thereof including a local water and sewer commission including a municipal gas or electric plant, a municipal lighting plant or cooperative which operates a telecommunications system pursuant to [ G. L. c. 164, § 47E ], department, board and commission, which exercises direction and control over the public employee, but not a private contractor with any such public employer, the Massachusetts Port Authority, or any other independent body politic and corporate."
**709 A local housing authority is an "authority" within the meaning of § 1, and, therefore, is a "public employer" within the ambit of the act. See Commesso v. Hingham Hous. Auth., 399 Mass. 805, 807, 507 N.E.2d 247 (1987) ("The definition of 'public employer,' has clearly included a town 'authority' since the statute was amended in 1981. See St. 1981, c. 179").
The defendants here contend that because the authority, as the sole member of the manager of the controlled affiliate, retains actual and legal control over the property, and because the controlled affiliate must comply with the statutes governing local housing authorities in G. L. c. 121B, and with various department regulations "in the same manner and to the same effect as if it were [a local housing authority]," see 760 Code Mass. Regs. § 4.15(1)(a), the controlled affiliate and its managing member should be treated as a local housing authority under the act and, accordingly, be deemed public employers. We disagree. To characterize either a limited liability company that is a controlled affiliate or a limited liability company that is the managing member of that controlled affiliate as a "public employer" would be inconsistent with the language of the definition of a public employer in § 1 and with the purpose and history of the act.
The language of the definition of a public employer in § 1 does not include a controlled affiliate among the various entities that are deemed public employers. In fact, it specifically excludes "a private contractor with any such public employer." See G. L. c. 258, § 1. Consequently, if a housing authority that owned a housing development were to retain a private contractor to manage the development (including delegating to that private contractor *677 the responsibility for maintenance and repairs in the housing development), a suit brought by a tenant of the housing development against the private contractor for injuries arising from the negligent failure to maintain or repair the premises could not be brought under the act and, accordingly, would not be subject to the limitations on liability in the act. In that scenario, the private contractor would not become a public employer even if the housing authority contractually required the private contractor to comply with the statutes and regulations governing local housing authorities in the same manner and to the same effect as if it were a housing authority. A contract that requires a private contractor to perform the maintenance and repair responsibilities of a local housing authority as if it were a local housing authority does not transform that private contractor into a public employer. **710 Accordingly, if a private contractor that manages property owned by a housing authority is not a public employer (even if it were contractually obligated to manage the property as if it were a housing authority), then a controlled affiliate that purchased the property from the housing authority, but is required by regulation to manage the property "in the same manner and to the same effect as if it were" a housing authority, see 760 Code Mass. Regs. § 4.15(1)(a), is also not a public employer. It would be strange indeed if the sale of the public property by the housing authority to a private entity could enable that private entity to become a public employer.
Nor would it be consistent with the purpose and history of the act to characterize a limited liability company that is a controlled affiliate or its managing member as a public employer. "One of the major purposes of [the act] clearly is to allow plaintiffs with valid causes of action to recover in negligence against governmental entities in Massachusetts. A second, and equally important, purpose is to preserve the stability and effectiveness of government by providing a mechanism which will result in payment of only those claims against governmental entities which are valid, in amounts which are reasonable and not inflated." Vasys v. Metropolitan Dist. Comm'n, 387 Mass. 51, 57, 438 N.E.2d 836 (1982). See Hallett v. Wrentham, 398 Mass. 550, 558, 499 N.E.2d 1189 (1986), quoting Irwin v. Ware, 392 Mass. 745, 772, 467 N.E.2d 1292 (1984) (act reflects "a legislative intent to be protective of ... public funds" while also "ensur[ing] that a meaningful recovery will be available to victims of public employee negligence"). The controlled affiliate and its managing member in this case are not governmental entities; they are private limited liability companies that have never been thought to be entitled to sovereign immunity. See Estate of Gavin v. Tewksbury State Hosp., 468 Mass. 123, 131, 9 N.E.3d 299 (2014), quoting Shapiro v. Worcester, 464 Mass. 261, 266, 982 N.E.2d 516 (2013) ("The act was passed in 1978 in response to 'the Legislature's desire to abolish "sovereign immunity and the crazy quilt of exceptions to sovereign immunity ... which courts [had] stitched together" ' "). And because the owner and the manager are not governmental entities, limiting the scope and amount of their liability would not protect public funds.
Conclusion. For the reasons stated, we affirm the denial of the defendants' motion for partial summary judgment, and remand **711 the case to the Superior Court for further proceedings consistent with this opinion.
So ordered.

As explained later in the opinion, a "controlled affiliate" of a local housing authority is defined as "[a]n entity with the power to own and manage residential real property of which and over which actual and legal control shall be in [a local housing authority]." See 760 Code Mass. Regs. §§ 4.01, 4.15 (2017).

In keeping with its ownership interests, RSEP Holding, LLC, is entitled to receive 99.99 per cent of the tax credits, while Red Stone Equity Manager, LLC, is entitled to receive 0.001 per cent.