NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12606


RICHARD MEYER  vs.  VEOLIA ENERGY NORTH AMERICA.



Suffolk.      January 10, 2019. - May 8, 2019.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher, &
Kafker, JJ.



Way, Public:  defect.  Municipal Corporations, Notice to
    municipality.  Notice, Action alleging injury caused by
    defect in public way.  Statute, Construction.




Civil action commenced in the Superior Court Department on
February 17, 2015.

The case was heard by Peter M. Lauriat, J., on a motion for
summary judgment.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


Kevin J. Powers (Andrew M. Fischer also present) for the
plaintiff.
Christopher R. Howe for the defendant.
John Pagliaro & Martin J. Newhouse, for New England Legal
Foundation, amicus curiae, submitted a brief.


KAFKER, J.  While riding his bicycle on Sudbury Street in

Boston, the plaintiff, Richard Meyer, struck a utility cover

that was misaligned with the road surface and injured himself. Within thirty days of the incident he submitted notice of claim to the city of Boston (city) regarding his injury. Thirty-one days after the incident, the city informed him that it would not pay Meyer's claim because the defendant, Veolia Energy North America (Veolia), was responsible for the defect that caused Meyer's injuries. A few days later, Meyer gave notice to Veolia and subsequently brought suit against Veolia for negligence. A judge of the Superior Court granted summary judgment to Veolia and dismissed Meyer's lawsuit. He concluded that G. L. c. 84, § 15 (§ 15 or road defect statute), provided the exclusive remedy for Meyer's claim against Veolia. He further concluded that Veolia was entitled to notice within thirty days from the date of Meyer's injury under G. L. c. 84, § 18 (§ 18 or notice statute), but that Meyer had not provided that notice.

We conclude that the decision below was erroneous. The text of §§ 15 and 18, the legal and legislative history relevant to those statutes, the case law, and the practical realities of providing notice within thirty days all confirm that the road defect and notice statutes apply to governmental and quasi governmental actors responsible for the public duty of maintaining the public way, and not to a private party such as Veolia that has created a particular defect in the way. Sections 15 and 18 do not limit Veolia's common-law liability

under tort law.  Consequently, Veolia may be sued for its own negligence without providing thirty days' notice.  Accordingly, we reverse the grant of summary judgment for Veolia.[1]

1.  Facts.  In reviewing a motion for summary judgment, we view the evidence in the record in the light most favorable to the nonmoving party.  See Graham v. Quincy Food Serv. Employees Ass'n, 407 Mass. 601, 603 (1990).

On July 1, 2013, Meyer rode his bicycle on Sudbury Street, a public way in Boston.  Meyer's bicycle struck a circular utility cover one foot or less in diameter that was misaligned with the road surface.  Meyer's collision with the cover caused him to crash to the ground and suffer injuries.  The utility cover bore the words "TRIGEN-BOSTON."[2]

On July 18, 2013, eighteen days after Meyer's injury, Meyer's counsel sent a notice of claim by certified mail to multiple city officials, including the mayor, the commissioner of public works, the clerk, and corporation counsel.  This claim alleged that as Meyer turned on his bicycle from Cambridge Street to Sudbury Street, he encountered a gap in the roadway due to improper paving around a utility cover, which created "a

---

[1] We acknowledge the amicus brief submitted in support of Veolia by the New England Legal Foundation.

[2] Veolia Energy North America (Veolia) represented that it purchased Trigen in 2007 and is its parent company.

hole that caught the bicycle wheel." The claim further alleged that the defect was the result of the "negligent maintenance of the roadway owned, maintained and controlled by the city of Boston."

On July 24, 2013, a claims officer in the city's law department sent a letter to Meyer's counsel requesting pictures of the defect's exact location and surrounding area. The following day, July 25, Meyer's counsel sent a photograph and a renewed notice of claim by certified mail to the mayor, the commissioner of public works, the clerk, corporation counsel, and the executive director and two commissioners of the city's water and sewer commission (commission).

On July 31, 2013, Meyer's counsel spoke with the claims officer. During that conversation, counsel inquired as to who was responsible for the improperly maintained utility cover. The claims officer did not inform Meyer's counsel that the city planned to contend that responsibility belonged to Veolia, a private company, rather than to the city. That same day, however, the claims officer sent a letter to Meyer's counsel denying the claim. The letter stated: "Our investigation indicates that the City of Boston is not responsible for your damages because the location of the defect is under the jurisdiction of Veolia Energy Co."

Meyer's counsel received this letter late in the day on August 1, 2013, thirty-one days after Meyer was injured. On August 6, counsel sent a notice of claim to Veolia, informing Veolia that Meyer had received injuries from "a defect in the roadway caused by a utility cover . . . that had been improperly maintained."

On February 17, 2015, Meyer filed a complaint alleging negligence by Veolia for a "defect in the roadway caused by an improperly and negligently installed and/or maintained utility cover or casting." Meyer did not, however, bring suit against the city. Veolia admitted that it owned and was responsible for maintaining the utility hole, utility cover, and surrounding pavement within thirty inches. Veolia moved for summary judgment on the ground that the exclusive remedy for Meyer's claim was § 15, which permits recovery for personal injury or property damage due to "a defect or a want of repair . . . in or upon a way" from "the county, city, town or person by law obliged to repair the same." It argued that Meyer had failed to give Veolia notice within thirty days, as required by § 18, and that such notice was a condition precedent to any recovery. Meyer argued, by contrast, that a private corporation such as Veolia was not a "person" within the meaning of §§ 15 and 18, nor was Veolia required to "keep . . . in repair" the street

where his injury occurred such that notice would be required under § 18.

On May 31, 2017, the judge allowed Veolia's motion and entered judgment dismissing Meyer's action.  The judge concluded that § 15 "is the exclusive remedy for personal injuries caused by a defect in a public way" and that § 18 "mandates notice to both private and government entities of any defect that the party is obliged to repair."  The judge held that the city's municipal code placed responsibility for repairing the allegedly defective utility cover on Veolia.  He accordingly concluded that Veolia was obliged by law to repair the alleged defect for purposes of § 15 and thus that Veolia was also the party entitled to receive written notice within thirty days of the date of injury pursuant to § 18.  Because Meyer had notified Veolia one week after this deadline, the judge held that Meyer was barred from proceeding under § 15 and allowed Veolia's motion for summary judgment.

Meyer appealed, and we transferred the case to this court on our own motion.

2.  Discussion.  An appellate court reviewing a grant of summary judgment examines its allowance de novo and from the same record as the motion judge.  See Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 123 n.1 (1997).  The standard of review is whether, viewing the evidence in the light most

favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law.  See Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991).

a.  Construction of the road defect and notice statutes. "[Q]uestions of statutory construction are questions of law, to be reviewed de novo."  See Bridgewater State Univ. Found. v. Assessors of Bridgewater, 463 Mass. 154, 156 (2012).  We interpret a statute according to the intent of the Legislature, which we ascertain from all the statute's words, "construed by the ordinary and approved usage of the language" and "considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished."  Harvard Crimson, Inc. v. President & Fellows of Harvard College, 445 Mass. 745, 749 (2006).  "Ordinarily, where the language of a statute is plain and unambiguous, it is conclusive as to legislative intent.  That said, we will not adopt a literal construction of a statute if the consequences of doing so are absurd or unreasonable, such that it could not be what the Legislature intended" (quotation and citations omitted).  Cianci v. MacGrath, 481 Mass. 174, 178 (2019).  Our principal objective is to ascertain and effectuate the intent of the Legislature in a way that is consonant with "common sense and sound reason" (citation omitted).  Commonwealth v. Curran, 478 Mass. 630, 633-634 (2018).

Both § 15, the road defect statute, and § 18, the notice statute, are part of G. L. c. 84, entitled "Repair of Ways and Bridges."[3] Section 1 announces the purpose of the chapter, using language that reflects its origins in the preindustrial era. The first sentence of § 1 states: "Highways and town ways, including railroad crossings at grade with such highways and town ways, shall be kept in repair at the expense of the town in which they are situated, so that they may be reasonably safe and convenient for travelers, with their horses, teams, vehicles and carriages at all seasons."[4]

The road defect statute imposes liability for personal injury or property damage by reason of a defect or want of repair in or upon a way.[5] In relevant part, § 15 states:

---

[3] The Tort Claims Act, G. L. c. 258, preserves the status and force of G. L. c. 84, thereby providing limited governmental liability for defects in ways. See Gallant v. Worcester, 383 Mass. 707, 711 (1981).

[4] The rest of G. L. c. 84, § 1, provides for cities and towns to submit requests for repair and reimbursement for the cost of repairs to the Commonwealth. Neither reimbursement from the State nor the relative degree of liability of a city versus the State or Federal government is relevant to the instant case.

[5] "Our decisions have construed a 'defect,' for purposes of G. L. c. 84, [§ 15,] to be anything in the state or condition of the way that renders it unsafe or inconvenient for ordinary travel." Gallant, 383 Mass. at 711. Objects on the road surface creating obstructions to travel are defects. Huff v. Holyoke, 386 Mass. 582, 585 (1982). In particular, an improperly positioned maintenance hole cover may constitute a defect. See Valade v. Consolidated Bldrs., Inc., 3 Mass. App. Ct. 519, 520 (1975).

"If a person sustains bodily injury or damage in his property by reason of a defect or a want of repair or a want of a sufficient railing in or upon a way, and such injury or damage might have been prevented, or such defect or want of repair or want of railing might have been remedied by reasonable care and diligence on the part of the county, city, town or person by law obliged to repair the same, he may, if such county, city, town or person had or, by the exercise of proper care and diligence, might have had reasonable notice of the defect or want of repair or want of a sufficient railing, recover damages therefor from such county, city, town or person; but he shall not recover from a county, city, town or local water and sewer commission more than one fifth of one per cent of its state valuation last preceding the commencement of the action nor more than [$5,000]; nor shall a county, city or town be liable for an injury or damage sustained upon a way laid out and established in the manner prescribed by statute until after an entry has been made for the purpose of constructing the way, or during the construction and repairing thereof, provided that the way shall have been closed, or other sufficient means taken to caution the public against entering thereon."

The notice statute requires a person injured by a road defect within the meaning of § 15 to give notice as a condition precedent to the bringing of a legal action pursuant to that section. In full, § 18 states:

"A person so injured shall, within thirty days thereafter, give to the county, city, town or person by law obliged to keep said way in repair, notice of the name and place of residence of the person injured, and the time, place and cause of said injury or damage; and if the said county, city, town or person does not pay the amount thereof, he may recover the same in an action of tort if brought within three years after the date of such injury or damage. Such notice shall not be invalid or insufficient solely by reason of any inaccuracy in stating the name or place of residence of the person injured, or the time, place or cause of the injury, if it is shown that there was no intention to mislead and that the party entitled to notice was not in fact misled thereby. The words 'place of residence of the person injured,' as used in this and the

two following sections, shall include the street and number, if any, of his residence as well as the name of the city or town thereof. Failure to give such notice for such injury or damage sustained by reason of snow or ice shall not be a defense under this section unless the defendant proves that he was prejudiced thereby."

As mentioned, the language of a statute is conclusive as to legislative intent where it is unambiguous. Cianci, 481 Mass. at 178. Here, however, where governmental and nongovernmental parties are involved, and the party responsible for the particular defect and the party responsible for the roadway differ, application of the road defect statute is not perfectly clear. In particular, where a private party is responsible for the particular defect but not the roadway, it is unclear whether such a party is covered by the statute.

We conclude that the road defect statute, like the notice statute, is meant to apply to the public duty to maintain the roadway and does not apply to a private entity responsible for a particular defect in the road. The Legislature did not intend to separate responsibility for the roadway from responsibility for the defect and provide liability to one and notice to the other. The statutes are directed at governmental liability for roadways and the defects thereon. Furthermore, where the Legislature included the word "persons," it did so for a very limited historical purpose: to include private parties once responsible for entire roadways. As will be explained infra,

this court, in an opinion authored by Justice Oliver Wendell Holmes, Jr., clarified this confusing point in Fisher v. Cushing, 134 Mass. 374 (1883).  In sum, the road defect and notice statutes provide for liability and notice to governmental and quasi governmental entities responsible for the roadways.  Private parties are not covered by these statutes when they cause particular defects in public roadways; rather, they are subject to suits in tort.  This becomes evident with close examination of the statutory text, the legislative history of the statutes, and case law, as well as consideration of the practicalities of notice within thirty days.

We begin with the statutory language.  Notably, both the liability and notice provisions refer to "the county, city, town or person by law obliged," but the words following that phrase differ.  Section 15, the road defect statute, allows for the recovery of damages from the entity "by law obliged to repair the same."  Section 18, the notice statute, requires notice to the entity "by law obliged to keep said way in repair."  The antecedent of "the same" in § 15 could be "a way" or "such defect."  Under the former interpretation, the liability imposed by § 15 and the notice required by § 18 concern the same entity; under the latter interpretation, potentially separate entities.  Our default assumption, however, is that the Legislature intends words to have the same meaning when used in closely proximate

sections of a particular chapter.  See Insurance Rating Bd. v. Commissioner of Ins., 356 Mass. 184, 188-189 (1969) ("Where the Legislature uses the same words in several sections which concern the same subject matter, the words must be presumed to have been used with the same meaning in each section" [quotation and citation omitted]).  The word "repair" elsewhere in G. L. c. 84 also refers to performing repairs on a particular structure that a town is required to keep in repair.  See G. L. c. 84, § 22 ("If a town neglects to repair any way which it is obliged to keep in repair . . .").  "Repair" also refers to repairing "ways and bridges" in the title of c. 84.  See American Family Life Assur. Co. v. Commissioner of Ins., 388 Mass. 468, 474, cert. denied, 464 U.S. 850 (1983) ("It is well established that, although the title of an act cannot control the plain provisions of the act, it may aid construction of ambiguous clauses").

The earliest version of the road defect statute, St. 1786, c. 81, § 7, authorized persons injured by "any defect, or want of necessary repair and amendment of any highway, causeway or bridge" to "recover of the county, town, the person or persons, who are by law obliged to keep the same highway, causeway, or bridge in repair" (emphasis added).  The truncation of this phrase to "the same" first occurred in St. 1850, c. 5, § 1, which stated that if a person is injured by "any defect or want

of repair, or of sufficient railing in or upon any highway, townway, causeway, or bridge, he may recover . . . of the county, town, or persons who are, by law <u>obliged to repair the same</u>" (emphasis added).  The legislative history demonstrates that the phrase "the same" refers to certain types of ways or other structures to be kept in repair.  It did not draw a distinction between responsibility for the way and responsibility for a particular defect in the way.

The structure and purpose of § 18, the notice statute, also confirm this reading.  See <u>New England Power Generators Ass'n</u> v. <u>Department of Envtl. Protection</u>, 480 Mass. 398, 410 (2018) ("The court does not determine the plain meaning of a statute in isolation but rather in consideration of the surrounding text, structure, and purpose . . ." [quotations and citation omitted]).  Section 18 would not make sense if the party whose defect caused the injury was not the same as the one receiving the notice:  it also conditions the right to maintain an action on the refusal of the "said county, city, town or person" that received the notice to "pay the amount" of the plaintiff's damages.  It would be illogical to require a plaintiff to send a demand letter to a nonliable party (i.e., the party responsible for the way) as a condition precedent to bringing suit against a wholly different liable party (i.e., the party responsible for the defect).  See <u>Curran</u>, 478 Mass. at 633-634 (statutory

interpretation must conform to common sense).  Additionally, § 18 states that notice shall not be invalid "solely by reason of any inaccuracy in stating the . . . place or cause of the injury, if it is shown that there was no intention to mislead and that the party entitled to notice was not in fact misled thereby."  If there was an obligation to give notice to the party who created the particular defect, as opposed to the party responsible for the way, this good faith exception would make little to no sense, because that good faith error would mean that notice would be adequate even when it was given to the incorrect party.

Finally, reading the different provisions of G. L. c. 84 together demonstrates that the obligation to keep a road in repair in § 1 and the liability for defects in a road in § 15 are tightly connected and concern the same party.  See Gregory v. Inhabitants of Adams, 14 Gray 242, 246 (1860) ("These provisions, although contained in different statutes, yet having the same general object in view, should undoubtedly be construed in reference to each other.  The former prescribes the standard of duty imposed upon towns; the latter fixes the responsibility which will devolve upon them, if injury results from their failure to conform to the requirements of the law").  The notice

regarding the incident that created that liability likewise goes to this same party.[6]

We emphasize that, in scenarios where multiple governmental or quasi governmental parties may have repair duties with respect to a particular way, assigning responsibility for the way may be difficult and notice should be provided to each party. Wolf v. Boston Water & Sewer Comm'n, 408 Mass. 490 (1990), exemplifies this issue. In that case, a plaintiff was injured by the collapse of an asphalt patch placed by the commission on a Boston street. Id. at 491. The commission was a "political subdivision" of the Commonwealth. Farrell v. Boston Water & Sewer Comm'n, 24 Mass. App. Ct. 583, 588 (1987).

---

[6] This interconnection is particularly clear from the statute that created the notice requirement, "An Act . . . in relation to the repair of highways, and remedies for injuries sustained thereon." St. 1877, c. 234. Section 1 imposed the duty to repair ("Highways, town ways, streets, causeways and bridges shall be kept in repair at the expense of the town, city or place in which they are situated . . ."). Section 2 created liability for failure to fulfill that repair duty ("If a person receives or suffers bodily injury, or damage in his property, through a defect or want of repair, or of sufficient railing in or upon a highway, town way, causeway or bridge, which might have been remedied, or which damage or injury might have been prevented by reasonable care and diligence on the part of the county, town, place or persons by law obliged to repair the same, he may recover in the manner hereinafter provided, of the said county, town, place or persons, the amount of damage sustained thereby . . ." [emphasis added]). Section 3 imposed the notice requirement on plaintiffs ("Any person injured in the manner set forth in the preceding section shall within thirty days thereafter give notice to the county, town, place or persons by law obliged to keep said highway, town way, causeway or bridge in repair . . ." [emphasis added]).

Under its enabling act, it was granted "all . . . obligations of the city" with respect to sewer and water systems, defined as "all . . . lands, easements, rights in land . . . and any other property, real or personal, incidental to and included in such" systems. Wolf, supra at 493, quoting St. 1977, c. 436, §§ 2, 5. It was also given the power "to enter onto any land within the city" to conduct "examinations" in the course of maintaining and repairing its systems, provided that the commission "restore such lands to the same condition." Wolf, supra, quoting St. 1977, c. 436, § 6 (g). In other words, the commission had the power to excavate entire streets and the corresponding duty to "repair the roadway." Wolf, supra. It therefore had a public duty to maintain the way and was entitled to notice under the statute. By contrast, a private company that lacked these powers would not have had the duty under § 15 with which we concluded the commission was vested.[7]

---

[7] In Hurlburt v. Great Barrington, 300 Mass. 524, 528 (1938), we stated that the "maintenance and the repair of sidewalks are not matters which may well be entrusted to two distinct municipal bodies." There, we concluded that a town was relieved of road defect liability when the Legislature had given a "fire district, a quasi corporation, all matters connected with the construction, the maintenance and the repair of sidewalks situated within the limits of the district." Id. at 529. This is in contrast to the facts in Wolf, where we concluded that the powers of the Boston water and sewer commission to excavate any streets within the city, provided that it made repairs, made it a party "obliged by law to repair the roadway," even though the city may also have remained obliged to repair the street. Wolf v. Boston Water & Sewer

b. The meaning of "person by law obliged to keep" the way "in repair" as clarified by the legislative history and case law. Our interpretation of the road defect and notice statutes is clarified by the historical understanding of the meaning of "person" in the statutes. Veolia argues that the plain language of the statutes applies equally to private and governmental entities. By contrast, Meyer claims that the legislative and legal history of the statutes demonstrates that the Legislature intended "persons" to apply only to governmental actors, not private for-profit corporations such as Veolia. Based on our review of this legal and legislative history, we conclude that that the statutes refer to the county, city, town, or person required to perform the public duty of maintaining the way and not to a private corporation that causes a defect in the way, even where the private entity has been authorized by a governmental entity to perform a particular function causing a defect in the way and the governmental entity seeks to transfer its responsibility for the defect to the private entity. Such private entities may be sued in tort, as has been the case historically.

---

Comm'n, 408 Mass. 490, 493 (1990). See Ram v. Charlton, 409 Mass. 481, 486 (1991) (both town and Commonwealth parties obligated by law to keep State highway in repair). Indeed, § 15 expressly names sewer and water commissions as potentially liable parties.

Before 1786, the road defect statute only specified counties and towns as liable parties.  See The Book of the General Lawes and Libertyes Concerning the Inhabitants of the Massachusets 6-7 (1660); St. 1693-1694, c. 6, § 6.  The 1786 "Act making provision for the repair and amendment of highways" first authorized a party injured by a road defect to bring a civil action for damages against "the county, town, <u>the person, or persons</u>, who are by law obliged to keep the same highway, causeway, or bridge in repair" (emphasis added).  St. 1786, c. 81, § 7.[8]  The 1786 statute did not, however, expressly define the term "persons."[9]

---

[8] Statute 1786, c. 81, § 1, imposed a general repair duty on inhabitants of particular localities with respect to "highways, town-ways, causeways, and bridges."  In turn, St. 1786, c. 81, § 7, imposed liability for defects in these same structures: "And be it further enacted by the authority aforesaid, that if any person shall lose a limb, break a bone, or receive any other injury in his person, or in his horse, team, or other property, through any defect, or want of necessary repair and amendment of any highway, causeway, or bridge; the person or persons injured thereby, shall and may recover of the county, town, the person, or persons, who are by law obliged to keep the same highway, causeway, or bridge in repair, in case they had reasonable notice of the defect, double the damages thereby sustained, by a special action of the case, before any Court proper to hear and determine the same."

[9] Consistent with the earlier statutes, a marginal note in the first printed edition of St. 1786, c. 81, § 7, summarized its provisions as "[d]amage happening through defects in ways or bridges, shall be made good by the county or town."  The Perpetual Laws of the Commonwealth of Massachusetts 377 (1789).  To the extent the 1786 Legislature viewed "persons" as encompassing corporate entities, they likely would have had in mind municipal corporations.  See Maier, The Debate over

In <u>Fisher</u>, 134 Mass. 374, authored by Justice Holmes, the court interpreted the road defect and notice statutes, and the meaning of the reference to "persons," in the course of reviewing the statutes' legislative and legal history.  As a noted scholar of legal history and the author of The Common Law (1881), Justice Holmes brought special knowledge and expertise to this interpretation.  The defendant in <u>Fisher</u> was sued for negligently maintaining a coal hole on a Boston sidewalk.  <u>Id.</u> at 374.[10]  Under the city ordinances, the owner was required to keep the coal hole and its covering "in good order at all times" and was liable to the city for any damages incurred by reason of the coal hole being "out of repair" or negligently covered.  Revised Ordinances of the City of Boston 171-172 (1882).  The defendant claimed that he did not receive the thirty days'

---

Incorporations, in Massachusetts and the New Nation 76 (C. Wright ed., 1992) (of approximately one hundred incorporating acts passed by 1780s Legislature, two-thirds concerned local governmental bodies, with "only a handful" concerning what would later be considered business corporations).

[10] A coal hole was an underground vault covered by a hatch with a cover where coal used for heating purposes was kept for easy access.  See S.P. Adams, Home Fires:  How Americans Kept Warm in the Nineteenth Century 105-106 (2014).  Under the city ordinances then in force, construction of a coal hole in the sidewalk required a license from the superintendent of streets and had to be built to certain specifications.  Revised Ordinances of the City of Boston 171-172 (1882).  Negligence suits from pedestrians in public ways alleging that defendants had improperly covered their coal holes were common.  See, e.g., <u>Gillis</u> v. <u>Cambridge Gas Light Co.</u>, 202 Mass. 222, 223 (1909); <u>French</u> v. <u>Boston Coal Co.</u>, 195 Mass. 334, 335 (1907).

notice to which he was entitled under the notice statute and therefore that the action could not be maintained.

The court rejected this argument: "The sections imposing liability to an action, from the St. of 1786 down, have been part of a statutory scheme creating or regulating a public duty to keep the highways in repair. The whole scope of that scheme shows that it is directed to the general public duty [to keep the way in repair], and that it has no reference to the common law liability for a nuisance." Fisher, 134 Mass. at 374-375. More specifically, "[t]he obligation of the 'persons' is the same obligation as that of the counties or towns mentioned alternatively with them," that is, the duty to maintain the highway. Id. at 375. "But the obligation of the defendants cannot properly be called an obligation to repair the highway. . . . It is a duty not to dig or maintain pits in the highway." Id. That duty, the court concluded, is different from the public duty to maintain the highway covered by the road defect statute. The court therefore held that the defendants could be sued in tort for the nuisance they created with their coal hole.

The court also went on to explain the meaning of "persons": "The mention of 'persons' in the statute, alongside of counties and towns obliged to repair, is easily explained. The outline of our scheme was of ancient date and English origin. In

England, while parishes were generally bound to repair highways and bridges, a person might be, ratione tenurae,[11] or otherwise. . . . [W]e cannot say, and probably the Legislature of 1786 could not have said, that there were no cases in the Commonwealth where persons other than counties or towns were bound to keep highways in repair. . . . Even if there were not, it was a natural precaution to use the words."  Fisher, 134 Mass. at 375-376.

Consistent with the holding in Fisher, we frequently allowed tort suits to proceed against individuals or private companies that caused road defects, while applying the statutes to the municipal entities responsible for maintaining the ways themselves.[12]  Notably, in a case with comparable facts to the

---

[11] "Ratione tenurae" is a Latin phrase meaning by reason of tenure.  Black's Law Dictionary 1454 (10th ed. 2014).  "One ground on which a private person may be held liable to repair a public footpath or other highway is 'ratione tenurae,' that is, that where a footpath runs through private land and the owner or occupier of that land has from time immemorial repaired the path, the person for the time being in possession must continue to repair the path."  Legal Memory, 73 Law J. 403, 409 (1932).

[12] For cases where private actors were sued directly in tort for injuries arising from defects they caused in a public way, see, e.g., Christman v. Shagoury Constr. Co., 349 Mass. 113, 115 (1965) (construction company that contracted with town to install maintenance holes could be held liable in tort for road defect in area of road around maintenance hole); Scholl v. New England Power Serv. Co., 340 Mass. 267, 270 (1960) (electric company and subcontractor company could be held liable to plaintiff for injuries sustained when she fell into excavated hole made by subcontractor as part of resurfacing project for city); McGinley v. Edison Elec. Illuminating Co., 248 Mass. 583,

instant one, a plaintiff was injured by a protruding maintenance hole cover that the defendant electric company had laid "in [a] public way" in conformity with specifications imposed by the city. Miller v. Edison Elec. Illuminating Co., 283 Mass. 517, 521-522 (1933). The company argued that the plaintiff's suit was barred because he did not provide notice pursuant to § 18. Id. at 522. We rejected this argument: relying on Fisher, we concluded that § 18's "requirement of notice is not applicable . . . in an action against private corporations or individuals." Id. Accord Regan v. John J. Amara & Sons Co., 348 Mass. 734, 737 (1965) (no notice required under § 18 in suit against defendant private contractor that acted negligently in failing to fill hole it made in public road while performing work for city); Seltzer v. Amesbury & Salisbury Gas Co., 188 Mass. 242, 243-244 (1905) (no notice required under § 18 against defendant gas company for "digging a pit and leaving it insufficiently or

---

587 (1924) (defendant company liable for negligence after plaintiff fell into unguarded open maintenance hole); Rockwell v. McGovern, 202 Mass. 6, 10 (1909) (contractor whom city had hired to complete excavation project for transit system could be held liable to plaintiff who was injured when part of sidewalk collapsed); Seltzer v. Amesbury & Salisbury Gas Co., 188 Mass. 242, 244 (1905) (defendant gas company could be held liable for injuries sustained by plaintiffs who fell into excavated trench that defendant failed to properly fill). See also note 10, supra (citing cases involving private companies sued for negligent maintenance of coal holes on public ways).

improperly filled, thus creating an obstruction to public travel").

Finally, we emphasize that we have not allowed government entities to assign or delegate their public responsibilities under the road defect statute.  As we explained in Scholl v. New England Power Serv. Co., 340 Mass. 267, 270-271 (1960), the "liability of a municipality under G. L. c. 84, § 15, for an injury to a traveller sustained by reason of a defect in a way attaches," even though the plaintiff may also have a claim against a private party, because the "statutory obligation of the city to keep [a public way] safe and convenient for public use could not be delegated to" private companies contracted to do particular road repairs.  Accord Torphy v. Fall River, 188 Mass. 310, 312 (1905) (despite hiring railroad company to reconstruct certain public streets, city "not deprived of this right of control [over the streets], nor relieved of its statutory duty" and could not "delegate this requirement" to "secure exemption from liability to those suffering injury"); Brooks v. Inhabitants of Somerville, 106 Mass. 271, 274 (1871) ("not in the power of the town . . . to delegate the care of the streets to [private contractor hired to construct water system] as to relieve themselves from their general responsibility for their safety and convenience"); Merrill v. Inhabitants of Wilbraham, 11 Gray 154, 156 (1858) (town's authorization of

aqueduct company to excavate road "did not discharge the town from liability for an injury occasioned by reason thereof upon the highway").

We emphasize today that the court in Fisher and the long line of authority discussed supra correctly interpreted the meaning of the road defect statute.  In these decisions, the court recognized that this statute is directed at a public duty for maintaining the way, not at private actors causing particular defects in the way; the latter are subject to liability in tort.  The statutory exclusive remedy applies only to those entities that have a public duty to maintain the way, not to private parties causing particular defects.

Unfortunately, there are also a limited number of cases that have confused or at least not clarified this distinction.  We clarify the confusion in these cases today.  Much of it can be traced back to Dickie v. Boston & Albany R.R., 131 Mass. 516 (1881).  There, we concluded that the statutes were applicable to a railroad corporation and not to the town where the railroad had been authorized by statute and the railroad's charter to keep an entire bridge in repair.  Thus, the town "was under no liability" to keep the bridge under repair "because other sufficient provision is made by law for its maintenance and repair."  Id. at 516.  In this context, we concluded that the "word 'persons' includes corporations, and applie[d] to the

defendant." Id. at 517.[13] A line of cases relying on Dickie, particularly a number involving railroads, applied the statutes to private parties, without addressing the specific statutes involved in Dickie that imposed liability on the railroad for the way. See, e.g., Murphy v. Boston & Me. R.R., 332 Mass. 123, 123 (1954) (railroad corporation entitled to notice under statute, where injury occurred on its train tracks crossing public road; citing Dickie, supra). Such cases were the exception and not the rule.[14] They nonetheless blurred the distinction between the public entities responsible for

---

[13] Notably, in the late Nineteenth Century, a "railway company" was regarded as a "quasi public corporation." Haupt v. Rogers, 170 Mass. 71, 78 (1898). See 18 Am. Jur. 2d Corporations § 31 (2019) (defining "quasi-public corporation" as "private corporation that has been given certain powers of a public nature, such as the power of eminent domain, in order to enable it to discharge its duties for the public benefit"). The only private corporations that we have ever concluded were subject to the road defect statute were "quasi-public" railroad or street railway corporations.

[14] See, e.g., Bailey v. Boston, 116 Mass. 423, 423 (1875) ("A city or town is not exempted from liability for a defect in a highway, because it is caused by misconduct or negligence in the construction or repair of a street railway"); Hawks v. Inhabitants of Northampton, 116 Mass. 420, 423 (1875) (concluding that despite "burden of certain partial repairs of the highway" placed on company by statute, town retained "general control . . . and with it the liability which has always existed for injuries occasioned by want of repair"); Middlesex R.R. v. Wakefield, 103 Mass. 261, 263 (1869) (right conferred by charters of street railway companies to use roads "does not give them the control of the highways. . . . [T]hat control is placed, or, more properly speaking, remains, in the municipal authorities of the places in which any part of the street railway is laid").

maintaining the way and private entities responsible for defects in the way but not the way itself.

We added to that confusion in <u>Ram</u> v. <u>Charlton</u>, 409 Mass. 481, 490, cert. denied, 502 U.S. 822 (1991), a case involving a suit against a town and the Commonwealth to recover damages for injuries sustained on a State highway that passed through the town, where we stated that "[b]oth private parties and governmental entities are entitled to notice within thirty days when a defect in a way under their control is alleged under G. L. c. 84, § 15." The ultimate source of this statement was <u>Dickie</u>. We should have been clearer that notice is only owed to the entity that has the public duty for maintaining the way, which in that case could have only been a governmental party. To the extent that this dictum suggested that G. L. c. 84, its notice requirements, and the exclusive remedy provision apply to private companies responsible for particular defects in the road -- a conclusion that would be inconsistent with <u>Fisher</u> and the other cases discussed <u>supra</u> -- that statement was in error.[15]

---

[15] We accordingly overrule <u>Sarrouf</u> v. <u>Boston</u>, 94 Mass. App. Ct. 901, 901 (2019); <u>Filepp</u> v. <u>Boston Gas Co</u>., 85 Mass. App. Ct. 901, 901 (2014); and <u>Bartholomew</u> v. <u>Charter Communications, Inc</u>., 84 Mass. App. Ct. 1104 (2013), in which the Appeals Court relied on <u>Ram</u> to hold that suits against private corporations based on defects that they created in public roads must be dismissed for failure to give notice to the companies under § 18. In these and other cases, the Appeals Court noted the inequity of the rule requiring notice for the particular defect. See <u>Sarrouf</u>, <u>supra</u> at 902 (court noted that motion judge found

c. <u>The practicalities of thirty days' notice</u>.  Our interpretation that the statutes are directed at the governmental or quasi governmental entity or entities responsible for the public duty of maintaining the way as a whole, but not at private parties responsible for a particular defect in the way, recognizes the practical realities of the thirty-day notice provision and respects the Legislature's intent when it imposed this tight time constraint.  Notice within thirty days is a difficult time frame to meet.  The Legislature has nevertheless decided that this time frame is necessary to "safeguard public defendants against frivolous claims and excessive liability by allowing such defendants to investigate and remedy any defects expeditiously, and by allowing them to evaluate claims and to determine at an early stage whether liability could be imposed against them"

---

that plaintiff had engaged in "diligent, but unsuccessful search of city records" and was unable to identify Boston Gas Company as potentially responsible party); <u>Filepp</u>, <u>supra</u> at 901-902 (after explaining that it was constrained by <u>Wolf</u>, and recognizing tight thirty-day deadline, court noted Legislature was appropriate body to consider making time frame longer).  See also <u>Farrell</u> v. <u>Boston Water & Sewer Comm'n</u>, 24 Mass. App. Ct. 583, 587 n.9, 590-591 (1987) (although recognizing that "to require separate notice within thirty days from an injured party to the commission was unfair since such a person would naturally assume the entire sidewalk to be owned by the city, to which timely notice was given," court held that injured plaintiff could not bring action for alleged road defect under § 15 against commission because she had not given notice to commission).

(citations omitted). Ram, 409 Mass. at 490-491. This notice requirement is reasonable so long as it applies only to those governmental or quasi governmental entities responsible for maintaining the way. An entirely different set of problems arises if notice must be given to private parties responsible for particular defects in the way.[16]

Identifying who is responsible for the way itself is practicable within thirty days. This also allows and incentivizes the entity responsible for the way, and most knowledgeable of who is responsible for the defect, to correct the problem as quickly as possible. See Ram, 409 Mass. at 490-491. The alternative reading -- that the notice statute instead requires notice to the private party responsible for the particular defect -- would impose an unrealistic deadline and create a trap for the unwary. Identifying a private party responsible for a particular defect within that time frame is extremely difficult, especially without the full cooperation of the city, town, or other governmental or quasi governmental

---

[16] This is also consistent with our recognition that applying the Tort Claims Act to a private limited liability company would not serve the purpose of that act, which is to "protect public funds." Acevedo v. Musterfield Place, LLC, 479 Mass. 705, 710 (2018). See Gallant, 383 Mass. at 711 (road defect statute consistent with "purpose underlying the [T]ort [C]laims [A]ct, viz., to institute a rational scheme of governmental liability that is consistent with accepted tort principles and the reasonable expectations of the citizenry with respect to its government" [quotation and citation omitted]).

entity responsible for the way itself, which may have contracted the work causing the defect to many different entities. Municipal workers have competing responsibilities that make their immediate and continuous cooperation undependable.[17] We discern no such intention.

Moreover, the rest of G. L. c. 84 contains numerous accommodations intended to ensure that an injured person who strives in good faith to comply with the notice requirement is not barred from bringing a claim, indicating an over-all intention to provide leniency in the notice requirement.[18]

---

[17] It may be particularly difficult to identify the corporate owner of a maintenance hole cover, as many older covers are "totally unidentified," and "[o]ne is left to conjecture their ownership and function."  M. Melnick, Manhole Covers 29 (1994).  Even where a cover does reveal some identifying information, an injured person would still be required to return to the scene of injury, search a cover and municipal records for identifying information, determine whether the corporation or a successor exists, and track down and serve the appropriate corporate entity within thirty days, a most difficult task in such a tight time frame.

[18] General Laws c. 84, § 18, provides that notice "shall not be invalid or insufficient" if the injured person inaccurately states "the name or place of residence of the person injured, or the time, place or cause of the injury, if it is shown that there was no intention to mislead and that the party entitled to notice was not in fact misled thereby."

General Laws c. 84, § 19, entitled "Service of notice," requires that notice be in writing and specifies to whom notice must be given in the case of a county, city, town, or person. Making clear that its provisions are forgiving, § 19 provides that "[a]ny form" of written communication signed by the injured person, or by some person acting on his or her behalf, that includes "the information that the person was so injured, giving

In sum, the statutory language, the legislative and legal history, the case law, and the practicalities of the thirty-day notice provision all lead to the conclusion that, although the road defect statute provides the exclusive remedy against a governmental or quasi governmental entity responsible for maintaining a way, that statute and the accompanying notice statute were not meant to displace the common-law remedy against a private party responsible for a defect in the way.  Here, both G. L. c. 84, § 1, and the city's municipal code unambiguously place the obligation to maintain and repair the streets of Boston on the city.  See Boston Municipal Code § 11-6.1 (2010) (commissioner of public works will "have charge of and keep clean and in good condition and repair the streets").  Veolia's assumption of the "burden of certain partial repairs of the

---

the name and place of residence of the person injured and the time, place and cause of the injury or damage, shall be considered a sufficient notice."  Moreover, in an instance where "physical or mental incapacity" renders it "impossible for the person injured to give the notice within the time required, he may give it within thirty days after such capacity has been removed."

General Laws c. 84, § 20, entitled "Omissions in notice; notice of insufficiency," offers amnesty to an injured person who has inaccurately stated the time, place, or cause of the injury.  Under this section, a defendant may "avail himself" of the insufficiency of the plaintiff's notice only if the recipient notifies the plaintiff in writing within five days of receipt that the defendant finds the plaintiff's notice inadequate and requests a written notice that conforms with the statutory requirements.  If the injured person complies, this revised notice "shall have the effect of the original notice."

highway" in connection with its limited occupation of a portion of the street does not transform it into the party obliged by law to maintain the entire street. Hawks v. Inhabitants of Northampton, 116 Mass. 420, 423 (1875). See Scholl, 340 Mass. at 272 (city "responsible because of failure to abate the defect by whomsoever created" and thus may be liable under road defect statute [quotation and citation omitted]); Snow v. Housatonic R.R., 8 Allen 441, 443 (1864) ("remedy which the [road defect] statute gives for such injuries against towns is only cumulative or additional to that which the party injured has at common law against the person by whose agency the obstruction or defect was caused or permitted to continue"). Veolia's repair obligations are "confined to the specific spot where the [utility cover] is . . . -- exists only by reason of the [cover], and not as part of a general duty to repair." Fisher, 134 Mass. at 375.[19] This case is comparable to the many other instances where courts have held private companies liable in tort for injuries caused by defects that they created in a public way, including for misaligned or otherwise defective maintenance hole covers. See

---

[19] Indeed, the city's municipal code specifically contemplates that liability will attach in the first instance to the city because it requires Veolia to indemnify the city "against all claims and demands of all persons for damages, costs, expenses or compensation for, on account of, or in any way growing out of, or the result of any surface defect occurring wholly or in part within the area described in [§] 11-6.20." Boston Municipal Code § 11-6.21 (1983).

Miller, 283 Mass. at 522.  See also note 12, supra (citing cases).  Accordingly, Meyer's failure to give notice to Veolia within thirty days of injury does not affect his ability to proceed against Veolia in a common-law negligence action.

3.  Conclusion.  For the foregoing reasons, we reverse the grant of summary judgment to Veolia.

So ordered.