FILIPPOVA vs. FRMINGHAM ZONING BOARD OF APPEALS, MISC 20-000073

































 
 GALINA FILIPPOVA, TRUSTEE of the PROSPECT STREET REALTY TRUST, Plaintiff, v. FRAMINGHAM ZONING BOARD OF APPEALS and STEPHEN MELTZER, EDWARD COSGROVE, SUSAN CRAIGHEAD, JOHN MCKENNA, JOSEPH NORTON, HEATHER O'DONNELL, and LAP YAN, as they are the Members of the FRAMINGHAM ZONING BOARD OF APPEALS, Defendants, FREDRIC W. SCHELONG, TRUSTEE of the FREDRIC W. SCHELONG 1997 REVOCABLE TRUST, Defendant-Intervenor
 MISC 20-000073 
 JUNE 23, 2021
MIDDLESEX, ss.
SPEICHER, J.
DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT














 Amateur radio antenna towers are protected by provisions of Federal law that require states to allow them, subject to reasonable regulation. Massachusetts, in accordance with Federal law, has implemented, in G. L. c. 40A, § 3, certain exemptions from local zoning for the benefit of amateur radio operators. The City of Framingham, in turn, has provided, for the benefit of amateur radio operators, exemptions from its zoning requirements for the construction of radio antenna towers for amateur radio operators. The scope and proper interpretation of those exemptions in the Framingham Zoning Bylaw [Note 1] (the "Bylaw") is the subject of the present dispute. 





 As there is no dispute as to any material facts, the parties filed cross-motions for summary judgment. A hearing on the cross-motions for summary judgment was held before me on February 11, 2021, after which I took the cross-motions for summary judgment under advisement. 





 For the reasons that follow, plaintiff's motion for summary judgment will be ALLOWED, and defendants' and defendant-intervenor's cross-motion for summary judgment will be DENIED. 





FACTS 





 The following material facts are found in the record for purposes of Mass. R. Civ. P. 56, and are undisputed for the purposes of the pending cross-motions for summary judgment: 





1. The plaintiff, Galina Filippova, as Trustee of the Prospect Street Realty Trust ("Filippova") is the owner of a parcel of land located at 273 Prospect Street in Framingham (the "Filippova Property" or the "Property"). Filippova owns the Property by way of a deed dated July, 10, 2018 and recorded with the Middlesex South Registry of Deeds (the "Registry") at Book 71365, Page 93. [Note 2]





2. The Filippova Property is improved by a single-family dwelling on a street zoned R-3 for single-family residential use, and which is occupied entirely by single-family homes. [Note 3] 





3. Galina Filippova and her husband Mikhail Filippov have lived at the Filippova Property since 2010. [Note 4]





4. Defendants are the members of the Framingham Zoning Board of Appeals: Steven Melzer, Edward Cosgrove, Susan Craighead, Jonathan McKenna, Joseph Norton, Heather O'Donnell, and Lap Yan (collectively, the "Board"). 





5. Defendant-Intervener, Frederic W. Schelong, Trustee of the Fredric W. Schelong 1997 Revocable Trust, owns the property at 259 Prospect Street in Framingham (the "Schelong Property"). [Note 5] The eastern, rear, line of the Filippova Property is shared with the Schelong Property. 





6. On August 23, 2019, Mikhail Filippov applied for building permits to construct an 80-foot high, heavy-duty self-supporting tower with an antenna (referred to as the "tower" or the "proposed tower"), located in the rear of the Filippova Property, 37 feet from the closest adjacent boundary line at 261 Prospect Street owned by a third party, 45 feet from the Schelong Property line, and approximately 90 feet from the third abutting property line at 309 Prospect Street, also owned by a third party (Permit No. 191912). [Note 6] The application submitted to the Building Commissioner also requested a "Shed Only" permit to install a 16-foot by 20-foot shed in the rear yard of the Filippova Property (Permit No. 191908). [Note 7] 





7. On October 10, 2019, the Building Commissioner issued Mikhail Filippov a building permit for the construction of the proposed self-supporting structure which was to serve as an amateur radio tower on the Filippova Property. [Note 8] 





8. The proposed tower for which Filippov received a building permit complies with the requirements for categorization as an "amateur radio tower" under the Bylaw. [Note 9] First, Filippova applied for and received a federal license to operate the proposed structure as an amateur radio tower; a copy of the license was attached to the building permit application. [Note 10] Second, the cost of the tower was under $10,000. As listed on the building permit, construction costs were estimated at $7,540 for labor and materials and $500 for electrical for a total cost of $8,040 (with an additional permit fee of $120.60). [Note 11] Third, the proposed tower is free-standing and is intended and planned to be located in the rear yard of the Filippova Property. Fourth, Filippov represented that the proposed structure will be operated and used as an amateur radio tower; further evidenced by the issuance of an amateur radio license issued by the Federal Communications Commission (the "FCC") on February 20, 2019. [Note 12] 





9. Three neighbors, including Defendant-Intervener Fredric W. Schelong, appealed the issuance of the building permit to the Board. [Note 13] The Board held a public hearing on the appeal on November 13, 2019, which was continued to December 11, 2019, and continued again to January 8, 2020. [Note 14] 





10. On January 8, 2020, the Board issued a written decision, filed with the City Clerk on January 22, 2020, indicating that the Board voted three in favor, none against, to grant the appeal and overturn the Building Commissioner's issuance of the building permit for the proposed tower at the Filippova Property, thereby ordering the Building Commissioner to revoke the building permit (the "Decision"). [Note 15] 





11. In its Decision, the Board found that the proposed tower was subject to and violated the setback requirements applicable to Wireless Communications Facilities (referred to at times as "WCFs") in Section V.E of the Bylaw and further, that the Board was authorized to determine reasonableness of regulations irrespective of exemptions from special permit review. The Decision states, in relevant part: [Note 16] 





 a. The Board finds that the setback requirements of §V.E.4.c.(2) constitute reasonable regulation of the location of a WFC [wireless communication facility], even one that may be exempt from the Special Permit requirement (see §V.E.4.e) and the full force of the City's zoning requirements. There is rational basis to conclude that this setback rule is related to health, safety, and aesthetics, serving a legitimate public purpose and that this provision 'reasonably allow(s) for sufficient height of such antenna structures so as to effectively accommodate amateur ration communications by federally licenses amateur ration operators and constitute the minimum practicable regulation necessary to accomplish the legitimate purposes of the city or town enacting such ordinance or by-law.' See G.L. c. 40A § 3. In the proposed location, 37 feet from the nearest neighbor's property line, an 80-foot tower could conceivably fall on the neighbor's property line and cause injury or property damage. The Appellants have also 

 demonstrated that the aesthetic quality of their residential environmental would be impacted. It is not necessary for the Board to make further findings on the likelihood or structural failure or the degree of impact to the aesthetic environment. [Note 17] 





 b. It is the judgment of the Board that the basic dimensional regulations are applicable to all tower applications, even those exempt from a special permit, and that the Board has the discretion, as land use boards have concerning other uses protected by Section 3 of the Zoning Act, to decide which of the regulations are reasonable as allowed by the statute. Therefore, the building permit is invalid and shall be revoked. Nothing shall prevent the respondent property owner re-applying for a tower in a different location that complies with the height and setback requirements, at least to a greater degree. For example, the tower could be moved to a more central location on the property further away from the neighbors' properties. [Note 18] 





12. Filippova filed a timely appeal of the Board's Decision to this court pursuant to G.L. c. 40A § 17. [Note 19] 





Framingham Zoning Bylaw 





13. Section II.B of the Bylaw, the "Table of Uses," provides that an "amateur radio tower" is a residential accessory use permitted as a matter of right, and not subject to a site plan or special permit requirement, in the R-3 zoning district in which the Filippova Property is located. [Note 20] 





14. The Bylaw generally requires uses located in the R-3 zoning districts to have a minimum 15-foot side yard setback and a maximum height of 35 feet (three stories). [Note 21] 





15. Section V.E of the Bylaw, entitled "Wireless Communications Facilities," was added to the Bylaw by Town Meeting in 1997, following the passage of the Federal Telecommunications Act of 1996. It provides that, "No wireless communications facility (which shall include monopoles, satellite dish[es] over one meter in diameter or antennas), shall be erected or installed except in compliances with the provisions of this Section, and shall require a special permit with review and approval as set forth herein." 





16. Section V.E.2.f. of the Bylaw defines wireless communications facilities as: "[a]ny structure or device that is used for the express purpose of conducting wireless communication including antennas, towers, satellite dishes, or equipment for transferring wireless transmissions with or without a building to house and/or maintain such equipment." [Note 22] 





17. Section V.E. of the Bylaw provides extensive design, site plan, and dimensional requirements for wireless communications facilities subject to the section. The section provides that wireless communications facilities are permitted only by special permit, and further establishes conditions, maintenance requirements, removal requirements, dimensional requirements, and design requirements for wireless communications facilities covered by the section. [Note 23] 





18. Bylaw Section V.E.3.e, entitled "Exemptions," provides in relevant part: "[t]he following types of wireless communications facilities are exempt from the special permit requirement of this bylaw and may be constructed, erected, installed, placed and/or used within the Town subject to the issuance of a building permit by the Building Commissioner. [Note 24] 





 1) Amateur radio towers used in accordance with the terms of any amateur radio service license issued by the Federal Communications Commission, provided that (1) the tower is not used or licensed for any commercial purpose; (2) the tower must have a cost or replacement value of less than $10,000.00; (3) if the tower is a free-standing device, such device shall be installed in the rear yard only; and (4) the tower must be removed if the use is discontinued for one year. 





 2) Towers used for the purposes set forth in M.G.L. C. 40A, Section 3..." [Note 25] 





DISCUSSION 





 "Summary judgment is granted where there are no issues of genuine material fact, and the moving party is entitled to judgment as a matter of law." Ng Bros. Constr. v. Cranney, 436 Mass. 638 , 643-644 (2002). "The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact." Id. at 644. In determining whether genuine issues of fact exist, the court must draw all inferences from the underlying facts in the light most favorable to the party opposing the motion. See Attorney Gen. v. Bailey, 386 Mass. 367 , 371, cert. denied, 459 U.S. 970 (1982). Whether a fact is material or not is determined by the substantive law, and "an adverse party may not manufacture disputes by conclusory factual assertions." Ng Bros. Constr. v. Cranney, supra, 436 Mass. at 648. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When appropriate, summary judgment may be entered against the moving party and may be limited to certain issues. Community Nat'l Bank v. Dawes, 369 Mass. 550 , 553 (1976). 





 Additionally, "a party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in Mass. R. Civ. P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." Kourouvacilis v. General Motors Corp., 410 Mass. 706 , 714 (1991). To succeed, the party moving for summary judgment does not need to submit affirmative evidence to negate one or more elements of the opposing party's claim, but the motion must be supported by some material contemplated by Rule 56(c). Id. Though the supporting material offered does not need to disprove an element of the claim of the party who has the burden of proof at trial, it "must demonstrate that proof of that element at trial is unlikely to be forthcoming." Id. 





 In the present action, there are no material facts in dispute. The question before the court in this G. L. c. 40A, § 17 appeal, is whether the Board erred in overturning the decision of the Building Commissioner to issue a building permit for the erection of the proposed radio antenna tower for the reason given by the Board, namely, whether the proposed antenna tower violated the setback requirements set forth in Section V.E of the Bylaw. More fundamentally, the issue at bar is whether the proposed tower is exempt only from the requirement in Section V.E that it be authorized by the issuance of a special permit, or whether the proposed antenna tower is exempt entirely from Section V.E of the Bylaw. 





 The first question to be considered is whether the Board correctly or incorrectly determined that the setback requirements for wireless communications facilities set forth in Section V.E of the Bylaw applied to the proposed antenna tower. This is a question of statutory interpretation with respect to the Bylaw. Only if the setback requirements of Section V.E properly apply to the proposed antenna tower, and therefore prohibit its installation in the location proposed, must the court then determine whether this dimensional regulation violates the protections afforded to amateur radio towers by G. L. c. 40A, § 3 and applicable Federal law. 





 In its Decision, the Board determined that the setback requirements in Section V.E.4 regulating Wireless Communications Facilities applied to the proposed tower and relied on the setback provisions in Section V.E.4.c.(2) in support of its decision overturning the Building Commissioner's decision to issue a building permit. The section of the Bylaw upon which the Board relied in making this finding provides in full as follows: 





 The setback of a free-standing WCF from the property line of the lot on which it is located shall be at least equal to the height of the structure plus twenty feet. The setback of any such facility shall be a minimum of three hundred feet from a residential zoning district or residential use. [Note 26] 





 The Board concluded that the first sentence of the setback requirement quoted above, which requires a property line setback equal to the height of the antenna plus twenty feet, is "applicable to all tower applications, even those exempt from a special permit, and that the Board has the discretion, as land use boards have concerning other uses protected by Section 3 of the Zoning Act, to decide which of the regulations are reasonable as allowed by the statute." [Note 27] Based on this interpretation of the Bylaw, and the requirements of G. L. c. 40A, § 3, the Board ordered the building permit revoked on the ground that it could not comply with the setback requirement of 100 feet (the height of the antenna tower plus twenty feet). The Board did not rely on or even address the second sentence of the same dimensional requirement, which requires that an antenna tower subject to the dimensional requirements of Section V.E of the Bylaw, must be "a minimum of three hundred feet from a residential zoning district or residential use." [Note 28] However, the Board implicitly determined that the 300-foot setback requirement from residential uses and districts would not be applied, by suggesting that the applicant re-apply to place the tower in a more central location on the lot, farther away from the abutters. [Note 29] 





 Whether or not the Board was free to disregard those regulations it chose not to apply (e.g. height limitations), the Board was not free to require compliance with special permit requirements where the Bylaw expressly exempts specific structures and uses from those requirements. Section V.E.3 of the Bylaw provides that amateur radio towers are exempt from the special permit requirement of this bylaw and may be constructed, erected, installed, placed and/or used within the Town subject to the issuance of a building permit by the Building Commissioner." [Note 30] (emphasis added) All of the subsidiary requirements of Section V.E of the Bylaw, other than the requirement that a wireless communications facility must obtain a special permit, are requirements that must be complied with in order to properly qualify for the special permit. They include submission requirements, setback requirements, design requirements, and other procedural requirements. By its decision, the Board has taken the position that it may pick and choose which of those requirements will remain applicable to uses that are, by the explicit terms of the Bylaw, exempt from the special permit requirement. No reasonable reading of the Bylaw permits this unfettered exercise of discretion. See Sinaiko v. Zoning Bd. of Appeals of Provincetown, 93 Mass. App. Ct. 274 , 278-279 (2018) (zoning board not free to determine that bylaw is inapplicable in certain situations where it explicitly applies to all new construction). 





 The interpretation of bylaws is a question of law for the court, not a question of fact, to be determined by ordinary principles of statutory construction. Framingham Clinic Inc. v. Zoning Bd. of Appeals of Framingham, 382 Mass. 283 , 290 (1981); Bldg. Comm'r of Franklin v. Dispatch Communications of New England, 48 Mass. App. Ct. 709 , 713 (2000). Absent express definition, the meaning of a word or phrase used in a local zoning enactment is a question of law and is to be determined by ordinary principles of statutory construction. Shirley Wayside Ltd. P'ship v. Bd. of Appeals of Shirley, 461 Mass. 469 , 477 (2012). The court first looks to the statutory language as the principal source of insight into legislative intent. Id. When the meaning of the language is plain and unambiguous, the court enforces the statute according to its plain wording unless a literal construction would yield an absurd or unworkable result. Commonwealth v. DeBella, 442 Mass, 683, 687 (2004) (court will not resort to extrinsic aids in interpreting the statute when the ordinary meaning of words yields a "workable and logical result"). 





 The terms used in a zoning bylaw are to be read in the context of the bylaw as a whole and to the extent consistent with common sense and practicality, they should be given their ordinary meaning. Kurz v. Bd. of Appeals of North Reading, 341 Mass. 110 , 112-113 (1960); Hall v. Zoning Bd. of Appeals of Edgartown, 28 Mass. App. Ct. 249 , 254 (1990). The words' "usual and accepted" meanings are "derived from sources presumably known to the bylaw's enactors, such as their use in other legal contexts and dictionary definitions. See Commonwealth v. Zone Brook, Inc., 372 Mass. 366 ,369 (1977). 





 Where ambiguities exist in the language of the bylaw, however, the court owes deference to a local board's reasonable construction of its own bylaw. Petrillo v. Zoning Bd. of Appeals of Cohasset, 65 Mass. App. Ct. 453 , 456 (2006); Shirley Wayside Ltd. P'Ship v. Bd. of Appeals of Shirley, supra, 461 Mass. at 475. Ambiguities exist when "multiple interpretations lie within the band of a reasonable reading, as to the meanings of terms included in, and the intentions lying behind, the ordinance's words." Livoli v. Zoning Bd. of Appeals of Southborough, 42 Mass. App. Ct. 921 ,923 (1997). Deference is owed to a local zoning board's interpretation of an otherwise ambiguous provision, because the local board is deemed to have special knowledge about the history and purpose of its zoning bylaw. Deadrick v. Zoning Bd. of Appeals of Chatham, 85 Mass. App. Ct. 539 , 545 (2014). See also Koines v. Zoning Bd. of Appeals of Cohasset, 91 Mass. App. Ct. 903 , 904 (2017). "If the board's interpretation of its by-law is reasonable, the court may not substitute its judgment." Coco Bella, LLC v. Town of Hopkinton, 92 Mass. 1102 (2017) (Rule 1:28 Unpublished Opinion), citing Tanner v. Bd. of Appeals of Boxford, 61 Mass. App. Ct. 647 , 649 (2004). 





 However, such deference is given only when that interpretation is reasonable. Pelullo v. Croft, 86 Mass. App. Ct. 908 , 909 (2014). An incorrect interpretation of a bylaw is not entitled to deference. Shirley Wayside Ltd. P'Ship v. Bd. of Appeals of Shirley, supra, 461 Mass. at 475 (a judge should overturn a local board's decision when the board's conclusion is not supported by any rational view, or when "the reasons given by the board lacked substantial basis in fact and were in reality mere pretexts for arbitrary action or veils for reasons not related to the purposes of the zoning law"). 





 Applying these standards to the present case, the court concludes that the Bylaw explicitly exempts amateur radio towers from the requirements of the entire Wireless Communications Facility section of the Bylaw and provides that instead, amateur radio towers are permitted as-of-right as accessory uses and may be erected upon the issuance of a building permit by the Building Commissioner. This is the only conclusion that can be reasonably reached when looking at the Bylaw as a whole and giving meaning to all the relevant sections. The Bylaw explicitly provides, in the Table of Uses, that an amateur radio tower is allowed as a matter of right as an accessory use in residential zoning districts, and further provides that accessory structures in residential districts are required to have a side yard setback of only fifteen feet. The Bylaw also explicitly provides that amateur radio towers are exempt from the special permit requirement of Section V.E "and may be constructed, erected, installed, placed and/or used within the Town subject to the issuance of a building permit by the Building Commissioner." (emphasis added) The dimensional requirements for wireless communications facilities that are subject to the special permit requirements of Section V.E require that such facilities must have a setback that is at least equal to the height of the structure plus 20 feet and further that such structures must be a minimum of three hundred feet from residential districts. The Board's interpretation of the Bylaw brings these differing provisions into hopeless conflict as applied to wireless communications facilities that are located in residential zoning districts. To give effect to the Board's interpretation, the provisions in the Table of Uses and the dimensional setback requirements for accessory uses would have to be ignored. Furthermore, the Board's conclusion that the property boundary setback requirements in Section V.E apply, [Note 31] but that the requirements of the next sentence, which provides that wireless communications facilities must be located at least three hundred feet from a residential district, do not apply, is inconsistent and unreasonable. The court cannot adopt the Board's construction of the Bylaw "if the consequences of doing so are absurd or unreasonable, such that it could not have been what the [legislative body] intended." Meyer v. Veolia Energy North America, 482 Mass. 208 , 212 (2019). Rather, the court's "principal objective is to ascertain and effectuate the intent of the [legislative body] in a way that is consonant with 'common sense and sound reason.'" Id., citing Commonwealth v. Curran, 478 Mass. 630 , 633-634 (2018). To accept the Board's interpretation of the Bylaw would require the court to ignore some of the Bylaw's provisions in order to give effect to others. The rules of statutory interpretation require the court to determine the intent and meaning of a statute as "ascertained from all its words..." In re E.C., 89 Mass. App. Ct. 813 , 816 (2016). (emphasis added) "'When the meaning of any particular section or clause of a statute is questioned, it is proper, no doubt, to look into the other parts of the statute; otherwise the different sections of the same statue might be so construed as to be repugnant and the intention of the legislature might be defeated.'" Commonwealth v. Neiman, 396 Mass. 754 , 756 (1986), quoting Holbrook v. Holbrook, 1 Pick. 248 , 250 (1823). 





 Giving meaning to the words of the entire Bylaw, including the sections on as-of-right uses pertaining to amateur radio towers as accessory residential uses, requires the court to conclude that the provision of Section V.E.3 of the Bylaw that amateur radio towers "are exempt from the special permit requirement of this bylaw" means that amateur radio towers are exempt from the entirety of Section V.E of the Bylaw, including the setback requirements. This is the only result that gives effect to the entire Bylaw and is consonant with common sense and reasonableness. 





 This conclusion is buttressed by the Board's inelegant attempt to reconcile irreconcilable provisions of the Bylaw by simply declaring that it has the discretion to pick and choose which shall apply. The Board implicitly found that certain dimensional requirements could be disregarded, by way of its finding that "the Board has the discretion...to decide which of the regulations are reasonable as allowed by the statute." [Note 32] By this finding, the Board appears to have claimed the roving and unfettered discretion to selectively apply and to disregard dimensional requirements as it chooses. Such a claim to unfettered discretion to pick and choose which dimensional requirements apply and which do not is the kind of unfettered discretion that is prohibited by the uniformity provisions of G. L. c. 40A, § 4. See SCIT, Inc. v. Planning Bd. of Braintree, 19 Mass. App. Ct. 101 (1984). Rather than implicitly finding that the setback requirement for wireless communications facilities did not apply to residential uses, the Board would more productively have understood that requirement to be evidence that the dimensional requirements of Section V.E are not intended to apply to exempt amateur radio towers in residential zoning districts. Instead, the Board simply disregarded the second sentence of the subsection, which provides that the setbacks for WCFs shall be a minimum of three hundred feet from a residential zoning district or residential use  thereby showing that WCFs are not located within residential zones. [Note 33] From this language one can surmise that WCFs may only be located in commercial and possibly industrial zones, but clearly may not be located within or closer than 300 feet to residential zoning districts. In the present case, the proposed amateur radio tower is located on the Filippova Property which is in the R-3 single-family residential zoning district. [Note 34] 





 The proposed amateur radio tower is not a wireless communications facility subject to the requirement for setback from a residential district or use, and accordingly, it also cannot be subject to the boundary setback in the same subsection. Rather, as the Building Commissioner found, the setback requirements applicable to the proposed tower are set forth in the "Table of Dimensional Regulations" in Section IV.E.2 of the Bylaw; specifically, for the R-3 zone, any structure must have a 15-foot side yard setback. [Note 35] The applicable 15-foot setback was also identified by the Building Commissioner who reviewed the plans and in finding the proposed tower complied with the Bylaw, issued the building permit. [Note 36] As stated above, the tower as proposed provides side yard setbacks of 37 feet from the shared boundary line of 261 Prospect Street, 45 feet from the boundary line of 259 Prospect Street (the Schelong Property), and approximately 92 feet from the boundary line of 309 Prospect Street, all exceeding the 15-foot minimum setback requirement in Bylaw, Section IV.E.2. [Note 37] As such, the amateur radio tower as proposed, satisfies the setback requirements of the Bylaw, Section IV.E.2. [Note 38] 





 Pursuant to the court's finding that the proposed radio antenna tower does not violate the setback provisions of the Bylaw as found by the Board, and further that the Board's finding that the proposed tower violated the setback provisions of the Bylaw was the only basis for the Board's reversal of the decision of the Building Commissioner, there is no occasion for the court to consider whether the provisions of the Bylaw constitute an attempt to unreasonably regulate an amateur radio antenna tower in violation of the relevant provisions of Federal law and the preemptive provisions of G. L. 40A § 3. 





 The court also need not address the possible violation of the height requirements set forth in the Bylaw because this was not a basis for the Board's decision. The Decision of the Board did not acknowledge, reference, address, discuss or otherwise rely on the height of the proposed radio antenna tower as a reason for its reversal of the Building Commissioner's decision to issue the building permit for the tower. As the Board did not give height as a reason in its written decision overturning the Building Commissioner's issuance of a building permit, it is foreclosed from doing so now. See Cumberland Farms, Inc. v. Bd. of Appeals of Wellfleet, 90 Mass. App. Ct. 1118 (2016) (Rule 1:28 Unpublished Opinion) (questioning "the propriety of the judge's decision to allow the board to defend its denial of the special permits at trial based on grounds it had never articulated before"). In addition, even if the Board had given height as a reason for its decision reversing the Building Commissioner's issuance of the building permit, the preemptive provisions of Federal law and G. L. c. 40A, § 3 would likely prohibit the inflexible application of height limitations to amateur radio antenna towers located in residential zoning districts. 





CONCLUSION 





 For the reasons stated above, plaintiff's motion for summary judgment is ALLOWED. The defendants' and defendant-intervenor's cross-motion for summary judgment is DENIED in all respects. Having determined that the proposed amateur radio tower is regulated by Section II.B.2 of the Bylaw as an accessory structure, and that, as determined by the Building Commissioner, it complies with the setback requirements for such structures, the court will issue a judgment annulling the Board's Decision ordering the revocation of the building permit and ordering the reinstatement of the permit as originally issued by the Building Commissioner. 





 Judgment will enter in accordance with this decision. 





FOOTNOTES
[Note 1] Although Framingham recently became a city, it has apparently not yet changed the designation of its zoning bylaw to "ordinance." 

[Note 2] Parties' Statement of Agreed Facts filed in support of motions for summary judgment ("Agreed Facts") at ¶¶ 1,4. 

[Note 3] Agreed Facts ¶¶ 6-7. 

[Note 4] Agreed Facts ¶ 5. 

[Note 5] Agreed Facts ¶ 2. 

[Note 6] Exh. 5, Building permit with attached plans; Agreed Facts ¶ 9. 

[Note 7] Exh. 5; Agreed Facts ¶¶ 8-9. 

[Note 8] Exh. 5, Agreed Facts ¶ 10. 

[Note 9] Exh. 4, City of Framingham Zoning Bylaw (August, 2019) at pp. 131-133: Bylaw Section V.E applicable to Wireless Communications Facilities and specifically section V.E.3.e which sets forth the qualifying exemption criteria for amateur radio towers. 

[Note 10] Exh. 5, pp. 16-17; Agreed Facts ¶ 11. 

[Note 11] Exh. 5, p. 2 

[Note 12] Exh. 5, pp. 16-17. 

[Note 13] Agreed Facts ¶¶ 7, 12. 

[Note 14] Agreed Facts ¶ 13. 

[Note 15] Exh. 8, Decision of the City of Framingham Zoning Board of Appeals to overturn the decision of the building commissioner to issue a building permit for the proposed tower on the Filippova Property (filed with the City Clerk on January 22, 2020) Agreed Facts ¶ 14. 

[Note 16] Exh. 8, pp. 5-6. 

[Note 17] Id. 

[Note 18] Exh. 8, p. 6. 

[Note 19] Agreed Facts ¶ 14. 

[Note 20] Exh. 4, pp. 27-28, Bylaw Section II.B, Table of Uses. 

[Note 21] Exh. 4, pp. 116-117, Bylaw Section IV.E.2, Table of Dimensional Requirements. 

[Note 22] Exh. 4, p. 132, 

[Note 23] Exh. 4, pp. 131-135, Bylaw Section V.E. 

[Note 24] Exh. 4, p. 133, Bylaw Section V.E.3, Exemptions from the special permit requirements. 

[Note 25] Exh. 4, p. 133, Section V.E.3.e.(1)-(2). 

[Note 26] Exh. 4, p. 134. 

[Note 27] Exh. 8, p. 6. 

[Note 28] Exh. 8, see pp. 5-6. 

[Note 29] Id. 

[Note 30] Exh. 4, p. 133, Bylaw Section V.1.3, exemptions from the special permit requirements. 

[Note 31] See Exh. 4, p. 134. Bylaw Section V.E.4.b provides in part only, that wireless communications facilities must have a setback from the lot line that is "at least equal to the height of the structure plus 20 feet." 

[Note 32] Id. 

[Note 33] Exh. 4, p. 134 (emphasis added). 

[Note 34] Exh. 3, City of Framingham Zoning Map; Agreed Facts ¶ 11. 

[Note 35] Exh. 4, pp. 116-117. 

[Note 36] Exh. 5, p. 2. 

[Note 37] Exh. 5. 

[Note 38] Exh. 4, p. 117. 


 
 Home/Search 
 Land Cases by Docket Number
 Land Cases by Date 
 Land Cases by Name
 


 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.